Robert SLUSSER *v.* FARM SERVICE, INC.,
and Monsanto Company, Inc.

04-28                                          198 S.W.3d 106

Supreme Court of Arkansas
Opinion delivered November 11, 2004

*Grider Law Firm, PLC*, by: *M. Joseph Grider*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by *John Keeling Baker*, for appellees.

R OBERT L. BROWN, Justice. Appellant Robert Slusser appeals from the circuit court's order granting summary judgment to the appellees, Farm Service, Inc. and Monsanto Company, Inc., and dismissing his claims against them regarding defective seeds for lack of jurisdiction. We affirm the judgment of the circuit court.

During the growing season of 1998, Slusser planted soybean seeds in June that he purchased from Farm Service, which listed on the bag a germination rate of 80%. Monsanto had manufactured the seeds. The seeds failed to germinate, and Slusser purchased more of the soybean seeds and replanted in July. They again failed to grow, and Slusser had them tested by the Arkansas State Plant Board (the Board) on July 23, 1998. The tests produced a germination rate of 29%. Upon informing Farm Service of the problem, it too had the seeds tested on August 17, 1998, and that test produced a germination rate of 35%.

On January 15, 1999, Slusser filed a request for seed arbitration with the Board, in which he claimed that the seeds' germination was defective and that he had suffered $41,115.60 in damages. On June 4, 1999, the Seed Arbitration Committee (the Committee) of the Board issued an order, which concluded that its jurisdiction to hear arbitration claims was governed by Ark. Code Ann. § 2-23-102(a) (Repl. 1996), and that Slusser's "alleged damage or defect was discoverable more than ten (10) days prior to January 15, 1999." The Committee then found that Slusser's request for seed arbitration was not timely filed and that the Committee was without jurisdiction to hear the matter. It denied the claim and dismissed it without further hearings.

On April 10, 2000, Slusser filed an amended complaint against Farm Service and Monsanto, the manufacturer of the seed.[1] In his complaint, Slusser asserted counts of breach of express and implied warranties of merchantability, negligence in the production of the seeds, and *res ipsa loquiter.* Monsanto then moved for summary judgment and claimed that Arkansas law mandates arbitration of claims for nonperformance of agricultural seed as a prerequisite to legal action. Farm Service later moved for summary judgment on the same basis. Slusser responded that § 2-23-102(a), which provides a ten-day time limit in which to file arbitration claims of such matters, is directory and not mandatory.

Following a hearing, the circuit court entered its final judgment and concluded that it lacked subject-matter jurisdiction to hear Slusser's claims, because he failed to satisfy the condition precedent of filing a claim within ten days of discovering a seed defect as required by § 2-23-102(a). The court observed that despite Slusser's belief that he had been damaged by the seeds' failure to perform during the 1998 planting season, he waited until mid-January 1999 before filing his sworn complaint for seed arbitration with the Board. The court concluded that Slusser failed to satisfy a statutorily created condition precedent for the circuit-court action. Accordingly, the court dismissed Slusser's action with prejudice and further ruled that Slusser's claims that the arbitration agreement lacked mutuality and was unconscionable were without merit.

Slusser urges, as his first point, that although the relevant statute, Ark. Code Ann. § 2-23-102(a) (Repl. 1996), does set forth

---

[1] Slusser's initial complaint was filed June 14, 1999.

a condition precedent to legal action that a buyer make a sworn complaint to the Board to commence arbitration within ten days after the alleged defect becomes apparent, that prerequisite is directory and not mandatory. In addition, he points to specific language in § 2-23-107(b)(3)(B), which permits the circuit court to take into account any finding by the Committee regarding lack of cooperation and the effect of delay in filing an arbitration claim upon the Committee's ability to determine the facts of the case. He claims that to hold as the circuit court did leads to an "absurdity" in interpreting the statute.

We turn then to the statute itself:

> (a) When any buyer believes that he has been damaged by the failure of agricultural seed to produce or perform as represented by the label attached to such seed as required by State Plant Board regulations established under the Arkansas Plant Act of 1917, § 2-16-201 et seq., as a *prerequisite* to the buyer's right to maintain a legal action against the dealer, such buyer *shall* make a sworn complaint against the dealer from whom such seeds were purchased, alleging the damages sustained or to be sustained, and file same with the Director of the State Plant Board *within ten (10) days after the alleged defect or violation becomes apparent*, and the buyer shall send a copy of said complaint to said dealer by United States registered mail.

Ark. Code Ann. § 2-23-102(a) (Repl. 1996) (emphasis added).[2]

Our canons for statutory construction have been noted many times:

> ... We review issues of statutory construction *de novo*, as it is for this court to decide what a statute means; thus, we are not bound by the trial court's determination. The basic rule of statutory construction

---

[2] This statute was amended by Act 921 of 1999 to substitute "within a reasonable time" for the ten-day time limit:

> (a)(1) When any buyer believes that he or she has been damaged by the failure of agricultural seed to produce or perform as represented by the labeling of the agricultural seed, as a prerequisite to the buyer's right to maintain a legal action against the dealer or labeler and within a reasonable time after the alleged defect or violation becomes apparent, the buyer shall file a written notice of intent to seek arbitration to permit inspection of the crops or plants during the growing season.

Ark. Code Ann. § 2-23-102(a)(1) (Supp. 2003).

is to give effect to the intent of the General Assembly. In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. This court construes the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *Id.* However, this court will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent.

*Turnbough v. Mammoth Spring Sch. Dist. No. 2*, 349 Ark. 341, 346, 78 S.W.3d 89, 92 (2002) (internal citations omitted).

Slusser initially argues the inconsistency of a subsequent statute. *See* Ark. Code Ann. § 2-23-107(b)(3)(B) (Repl. 1996). Section 2-23-107(b)(3)(B) permits a circuit court to "take into account any findings of the committee with respect to the failure of any party to cooperate in the arbitration proceedings, including any finding as to the effect of delay in filing the arbitration claim upon the committee's ability to determine the facts of the case." According to Slusser, in light of this section regarding delay, it would be an absurd interpretation to require a ten-day deadline before legal action could be maintained. We disagree.

It is first and foremost our responsibility to harmonize our statutes where possible. *See Darr v. Bankston*, 327 Ark. 723, 940 S.W.2d 481 (1997). In that vein, we interpret § 2-23-107(b)(3)(B) and its reference to a delay in filing the arbitration claim as including any and all delays by the buyer in filing the claim. The most serious delay that comes to mind would be the buyer's delay in determining that the seed is defective. It is that point in time when the defectiveness "becomes apparent" to the buyer that begins the running of the ten-day period for filing the claim. If the buyer is dilatory in determining defectiveness, this would have a deleterious impact on the committee's ability to get to the field and investigate the alleged defect. Delay within the ten-day period might also be a factor that would hamper the committee's investigation. The short answer to Slusser's argument, however, is that § 2-23-107(b)(3)(B) does not render the ten-day requirement for filing a claim an absurdity.

Slusser, in addition, relies on two foreign cases to support his contention that § 2-23-102(a) is directory and not mandatory. *See*

*Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486 (Tex. 2001); *Presley v. P & S Grain Co., Inc.*, 289 Ill. App. 3d 453, 683 N.E.2d 901 (1997). Neither case operates as precedent for the instant case for the simple reason that the statutes in Texas and Illinois differ significantly from § 2-23-102(a).

In the *Wilkins* case, the pertinent Texas statute provided an arbitration requirement as a prerequisite to maintaining legal action but included no time frame for doing so. *See* Tex. Agric. Code § 64.002(a). Indeed, section 64.006 of the code provided ". . . the complaint must be filed within the time necessary to permit effective inspection of the plants under field conditions." In the instant case, § 2-23-102(a) specifies a precise time frame for filing — ten days — as a condition precedent for legal action.

In *Presley*, the Illinois statute read that a purchaser of seed "cannot" maintain a civil action against the seller of seed "unless the buyer has first submitted the claim to arbitration." 710 Ill. Comp. Stat. 25/10 (West 1994). The Illinois appellate court found that the word "cannot" rendered the statute directory and not mandatory. The court reasoned:

> If a statute requires certain acts to be done and if the statute also provides a result following the failure to do those acts, then the statute is mandatory; otherwise, if the statute provides no result for the failure to do the acts, the statute is directory.

*Presley*, 289 Ill. App. 3d at 463, 683 N.E.2d at 909. But, again, the Illinois statute did not include the mandatory word "shall." Nor did it state that the submission of the claim was a "prerequisite." The Arkansas statute at issue in the instant case is different. It mandates that a *complaint* be filed with the Plant Board within ten days of discovering the defect and that this is a prerequisite for any legal action. Thus, the consequences for failure to act are spelled out in § 2-23-102(a), while they are not in the Illinois statute.

The case that supports Farm Service's argument and is the closest factually to the instant case is *Ferry-Morse Seed Co. v. Hitchcock*, 426 So. 2d 958 (Fla. 1983). In that case, the United States Court of Appeals for the Eleventh Circuit certified several questions of law to the Florida Supreme Court. One question dealt with the Florida Statute, § 578.26(1) (1977), which required, as does the Arkansas statute, as follows:

> (1) When any farmer is damaged by the failure of agricultural, vegetable, or forest tree seed to produce or perform as represented

by the label attached to such seed as required by Section 578.09, as a prerequisite to his right to maintain a legal action against the dealer from whom such seed were purchased, such farmer shall make a sworn complaint against such dealer alleging damages sustained and file same with the department within ten days after the defect or violation becomes apparent and send a copy of said complaint to said dealer by United States registered mail; provided that requirement for filing complaint therein set forth appears legibly typed or printed on the analysis label attached to the package containing such seed at the time of purchase by the farmer.

426 So. 2d at 960 (emphasis in original removed). The question posed to the Florida Supreme Court was does the failure to file the complaint with the Florida Department of Agriculture within ten days bar the farmer from maintaining a legal action. The Florida Supreme Court held that it did:

We find that Hitchcock's cause of action rested solely upon alleged violations of the Florida Seed Law's labelling [sic] requirements. By failing to comply with the statutory notice requirements Hitchcock is barred from bringing action for damages against the seed merchant, notwithstanding his couching the claim in terms of negligence or breach of warranty.

*Id.* at 961.

We are also mindful of the blackletter law relating to whether legislative language is mandatory or directory:

The intention of the legislature as to the mandatory or directory nature of a particular statutory provision is determined primarily from the language of the statute. Words or phrases which are generally regarded as making a provision mandatory include "shall" and "must." Accordingly a statute's use of the mandatory term "shall" normally creates an obligation impervious to judicial discretion.

73 AM. JUR. 2d *Statutes* § 13 (footnotes omitted).

. . .

. . . A statutory time limit is mandatory only if it contains both an express requirement that an action be undertaken within a particular amount of time and a specified consequence for failure to comply with the time limit

73 Am. Jur. 2d *Statutes* § 15 (footnote omitted).

. . .

> Compliance with a mandatory provision of a statute is a condition precedent to the privilege conferred.

73 Am. Jur. 2d *Statutes* § 14 (footnote omitted).

Arkansas cases agree that in determining whether a statute's provisions are mandatory or directory, "we adhere to the principle that those things which are of the essence of the thing to be done are mandatory. . . ." *See, e.g., Crawford & Lewis v. Boatmen's Trust Co.*, 338 Ark. 679, 690, 1 S.W.3d 417, 424 (1999).

■ A review of § 2-23-102(a) reveals that there is nothing permissive or directory about the Arkansas statute. The clear and unambiguous language of the statute provides that before the buyer even has the right to maintain a legal action against the dealer, he *shall* make a complaint *and* file the same within ten days after the apparent defect. When the General Assembly uses the word "shall," we have said this clearly shows that it intended mandatory compliance. *See Loyd v. Knight*, 288 Ark. 474, 706 S.W.2d 393 (1986). This assessment is further bolstered by the title of the act which established the chapter: "AN ACT to provide for *Mandatory* Arbitration of Claims Related to Defective Agricultural Seed; to Establish an Arbitration Committee; and for Other Purposes." *See* Act 1024 of 1991 (emphasis added). The General Assembly deemed Act 1024 of such importance that it provided for its immediate effectiveness by including an Emergency Clause.

The mandatory nature of the requirement of an arbitration complaint is further evidenced by the statutory notice required to be put on the seed containers:

> (2) A notice in the following form, or some reasonably equivalent language is sufficient:
>
> "Notice of Mandatory Arbitration
>
> NOTICE: As a prerequisite to maintaining a legal action based upon the failure of seed to which this label is attached to produce as represented, a consumer shall file a sworn complaint with the Director of the State Plant Board within such time as to permit inspection of the crops or plants during the growing season."

Ark. Code Ann. § 2-23-102(d)(2) (Repl. 1996). Lastly, this court has emphasized in the past that if the right of action depends on some condition precedent, the cause of action accrues when the condition precedent is met. *See Zufari v. Architecture Plus*, 323 Ark. 411, 914 S.W.2d 756 (1996).

■ In short, in light of the repeated references to the mandatory notice in the statute, we are hard pressed to disregard its plain language and hold that the requirement is merely permissive or directory. The intent of the General Assembly is clear to this court that the complaint to the Plant Board filed within ten days after the defectiveness becomes apparent is a condition precedent to legal action. Accordingly, like the Florida Supreme Court in the *Ferry-Morse Seed Company* case, we hold that failure to comply with the mandatory notice requirements precludes legal action for damages.

There is one other point that needs to be addressed in connection with the notice requirement. This point relates to the lack of a requirement in the statute (§ 2-23-102(d)(2)) that the notice on the seed containers include the ten-day time limit. We observe, initially, that the notice on the seed container in the instant case complies with the statutory requirement. But, in addition, we do not conclude that the absence of the ten-day requirement in the statutory notice undermines the ten-day mandate under § 2-23-102(a).

■ Slusser, of course, knew as early as July 1998 that the seeds were not germinating properly. Yet, he did not file his complaint with the Plant Board until more than five months later. Hence, his dilatoriness barred his legal action under any definition of what is a reasonable time to comply with the statute. But irrespective of that, we do not deem the absence of the ten-day time limit in the statutory notice for containers in § 2-23-102(d)(2) to do away with the clear language of § 2-23-102(a). The statutory notice required for containers alerts farmers to the fact they have to file a complaint with the Plant Board to preserve their right to pursue legal action. The stated reason for this under § 2-23-102(d)(2) is to give the Plant Board time to permit inspection of the plants during the growing season. The growing season was over by the time the complaint was filed by Slusser. And, in our judgment, Slusser had an obligation to ascertain when the complaint was required to be filed. This he plainly did not do. *See*

*Henderson v. Gladish,* 198 Ark. 217, 128 S.W.2d 257 (1939) (observing that every person is presumed to know the law).

█ Slusser further complains that § 2-23-102(a) lacks mutuality in that it places the onus on buyers to file their complaints within ten days but makes no comparable requirement for the dealers. However, Slusser fails to cite this court to any authority standing for the proposition that arbitration procedures *required by statute* must contain elements of mutuality. And the statute is clearly what we are interpreting — not a contract. Without citation to authority or persuasive argument, we decline to address the point. *See Gwin v. Daniels,* 357 Ark. 623, 184 S.W.3d 28 (2004).

█ The same is true of Slusser's argument that the statutory notice requirement of ten days is unconscionable and violative of public policy. The ten-day requirement is prescribed by the General Assembly as part of the arbitration procedures. And arbitration is clearly favored in Arkansas. *See Cash in a Flash Check Advance of Ark., L.L.C. v. Spencer,* 348 Ark. 459, 74 S.W.3d 600 (2002). Slusser cites us to no authority that the doctrine of unconscionability should apply in this context. Thus, we will not address the point. *See Gwin v. Daniels, supra.*

As a final point, we agree with Farm Service and Monsanto that a specific argument that § 2-23-102(d)(2) requiring notice on seed containers was violative of public policy was not raised to the circuit court. Accordingly, we will not address the issue.

Affirmed.

THORNTON, J., not participating.