Thomas G. CARMODY and Dr. Norman C. Savers, Jr.,
as Co-Administrators of the Estate of Helen Virginia Coan,
Deceased, and on Behalf of the Heirs of Helen Virginia Coan  *v.*
RAYMOND JAMES FINANCIAL SERVICES, INC.

07-909                                                    281 S.W.3d 721

Supreme Court of Arkansas
Opinion delivered April 3, 2008

*Wilkinson Carmody Gilliam*, by: *Arthur R. Carmody, Jr.*; *Katherine Savers McGovern*; and *Marshall & See*, by: *Pat Marshall*, for appellants.

*Williams & Anderson PLC*, by: *Peter Kumpe* and *Alison Dennington*, for appellee.

J IM HANNAH, Chief Justice. Appellants, Thomas G. Carmody and Dr. Norman C. Savers, Jr., as co-administrators on behalf of the Estate of Helen Virginia Coan, deceased, and on behalf of the heirs of Helen Virginia Coan, appeal the probate order compelling arbitration issued by the Ouachita County Circuit Court. We affirm.

On March 8, 1977, Joseph Coan, by order of the Ouachita County Probate Court, was appointed as guardian of the person and the estate of Helen Virginia Coan ("HVC"). On November 19, 1985, after Joseph's death, Linnie Betts was appointed as the guardian of the person and the estate of HVC. On the same day, a Letter of Guardianship of the Person and the Estate in Succession were issued.

Betts, as guardian, petitioned the probate court on numerous occasions, requesting the court's approval for various actions, and the probate court granted her petitions. On June 27, 1996, Betts, as guardian for HVC, executed an agreement with Raymond

James & Associates, Inc., authorizing the transfer of securities from a Stephens Inc. account to a Raymond James account. On the same date, Betts, as guardian of HVC, executed a New Account Form with Robert Thomas Securities, Inc., a subsidiary of Raymond James Financial, Inc. The New Account Form contained a Client Agreement, which included an arbitration agreement.

On October 30, 1997, Betts petitioned the court for authorization "to transfer all stocks owned by [HVC] to Raymond James & Associates, Inc., for deposit in the name of Linnie Betts, Guardian of the person and estate of Helen Virginia Coan." The probate court authorized the transfer, and on various dates thereafter, the court entered orders authorizing Betts to transfer stock for deposit in Raymond James, to sell stock held by Raymond James for the benefit of HVC, to re-register stock in the name of Raymond James to be held in the guardianship account, and to invest in certain specified funds as advised by Raymond James. On January 15, 2002, Betts, as guardian of HVC, executed a New Account Form with Raymond James Financial Services, Inc. This New Account Form contained a Client Agreement, which included an arbitration agreement.

When HVC died, Betts was appointed as co-administrator of HVC's estate. On March 13, 2006, the probate court ordered the appointment of Norman Savers and Tom Carmody as co-administrators of the Estate of HVC. The appointment was accepted and the Letters of Administration were issued on the same date. Subsequently, in an order entered on June 2, 2006, Betts was removed as co-administrator.

On November 2, 2006, the Estate of HVC, through its administrators, and the heirs of HVC filed suit against various defendants, including appellee Raymond James Financial Services, Inc. ("Raymond James"), alleging that HVC funds were commingled with the funds of another estate. Subsequently, on December 4, 2006, Raymond James filed a Motion to Stay Litigation and Compel Arbitration. HVC's estate opposed the motion. Following a hearing held on March 12, 2007, the court entered an order staying litigation against Raymond James and compelling arbitration.

The circuit court found that the arbitration agreements contained in the client agreements did not violate Ark. Code Ann. §§ 28-65-301(a)(3) and 28-65-302(a)(1)(G) (Repl. 2004). Further, the court found that arbitration agreements did not violate

the public policy of Arkansas. Finally, the court concluded that the agreements were binding and enforceable on the petitioners who asserted claims derivative of the HVC estate.

The estate of HVC now brings this appeal, arguing that the circuit court erred in granting Raymond James's motion to compel arbitration because Ark. Code Ann. §§ 28-65-301(a)(3) and 28-65-302(a)(1)(G) required probate court approval of the binding arbitration agreement. HVC's estate thus claims that, absent the court's prior approval of an arbitration agreement, the agreement is unenforceable. In addition, HVC's estate argues that a contract agreeing to a binding arbitration of an incapacitated person's claims without court approval violates public policy.

As an initial matter, we note that Raymond James has filed a motion to dismiss appeal. Raymond James argues that this court does not have jurisdiction to entertain this appeal because the circuit court's order compelling arbitration is not appealable. Pursuant to the Uniform Arbitration Act, an appeal may be taken from an order denying an application to compel arbitration made under Ark. Code Ann. § 16-108-202 or an order granting an application to stay arbitration made under Ark. Code Ann. § 16-108-202(b). *See* Ark. Code Ann. § 16-108-219 (Repl. 2006). However, this court has held that an order compelling arbitration is not appealable. *See England v. Dean Witter Reynolds, Inc.*, 306 Ark. 225, 811 S.W.2d 313 (1991); *Chem-Ash, Inc. v. Ark. Power & Light*, 296 Ark. 83, 751 S.W.2d 353 (1988).

HVC's estate argues that the order compelling arbitration is appealable pursuant to Ark. R. App. P.–Civ. 2(a)(12), which provides in relevant part that, under Ark. Code Ann. § 28-1-116, all probate orders are appealable, except an order removing a fiduciary for failure to give a new bond or render an accounting required by the court or an order appointing a special administrator. Raymond James responds that the order of the circuit court compelling arbitration is not "an order. . . under the provisions of the Probate Code" as required by Ark. Code Ann. § 28-1-116(a) (Repl. 2004). Rather, Raymond James argues that the order staying the litigation and compelling arbitration is an order under the provisions of the Federal Arbitration Act, 9 U.S.C.A. § 2 (1999). Thus, Raymond James argues that Rule 2(a)(12) is inapplicable. We disagree. Given that the order compelling arbitration included findings regarding probate matters, we

conclude that the order is appealable under Rule 2(a)(12), and the motion to dismiss appeal is denied. Therefore, we will proceed with the appeal.

We review probate proceedings de novo and we will not reverse the decision of the probate court unless it is clearly erroneous. *In re Estate of Keathley*, 367 Ark. 568, 242 S.W.3d 223 (2006). Similarly, we review issues of statutory construction de novo as it is for this court to decide what a statute means. *Stephens v. Ark. Sch. for the Blind*, 341 Ark. 939, 20 S.W.3d 397 (2000). In this respect, we are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Id.*

The basic rule of statutory interpretation is to give effect to the intent of the General Assembly. *Martin v. Pierce*, 370 Ark. 53, 257 S.W.3d 82 (2007). The first rule in determining the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* This court will construe a statute so that no word is left void, superfluous or insignificant, with meaning and effect given to every word in the statute if possible. *Id.* When the language of the statute is plain and unambiguous, conveying a clear and definite meaning, we need not resort to the rules of statutory construction. *Id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.*

HVC's estate argues that Ark. Code Ann. §§ 28-65-301(a)(3) and 28-65-302(a)(1)(G) (Repl. 2004) require reversal in this case.[1] We begin by noting that a " '[g]uardian' is one appointed by a court to have the care and custody of the person or of the estate, or of both, of an incapacitated person." Ark. Code Ann. § 28-65-101(3) (Repl. 2004). Section 28-65-301(a)(3) (Repl. 2004) provides that "[t]he guardian of the person shall be entitled to the custody of the ward but shall not have the power to bind the ward or his or her property." Raymond James argues here, as it did

---

[1] We observe that, in its argument before the circuit court and in its argument on appeal, HVC relies on the 2004 versions of the statutory subsections at issue, even though Betts entered into agreements with Raymond James prior to 2004. Because there are merely technical, not substantive, differences between prior versions of the subsections and the 2004 versions of the subsections at issue, we will consider the 2004 version in our analysis.

below, that Ark. Code Ann. § 28-65-301(a)(3) did not limit Betts's authority to bind HVC's property because the statute means that a guardian who is a guardian of the person *only* does not have authority over the ward's property. Raymond James states that, because Betts was not merely the guardian of the person of HVC, but rather the guardian of the person *and* of the estate of HVC, § 28-65-301(a)(3) is simply inapplicable to the instant case. Raymond James avers that the broader provision found in § 28-65-301(b) (Repl. 2004) is applicable. Section 28-65-301(b) (Repl. 2004) provides in relevant part:

> (b)(1) It shall be the duty of the guardian of the *estate*:
>
> (A) To exercise due care to protect and preserve it;
>
> (B) To invest it and apply it as provided in this chapter;
>
> (C) To account for it faithfully;
>
> (D) To perform all other duties required of him or her by law; and
>
> (E) At the termination of the guardianship, to deliver the assets of the ward to the persons entitled to them.

(Emphasis added.)

Raymond James's argument is well taken. The circuit court found:

> Petitioners further contend that Betts, as guardian, did not have the power to bind the assets of the incompetent. Petitioners refer specifically to Ark. Code Ann. § 28-65-301(a)(3) as the basis for the asserted limitation placed upon the guardian. However, it is clear that the language that denies a guardian power to bind the ward's property refers to a guardian of the person only. Ark. Code Ann. § 28-65-301(b)(1) outlines the duties of the guardian of the estate, which includes the duty to invest the assets of the ward and to perform all other duties required by law.

The circuit court's findings are not clearly erroneous. The plain language of Ark. Code Ann. § 28-65-301(a)(3) indicates that the guardian of the *person* does not have the authority to bind the ward or his property. It does not state that the guardian of the *estate* lacks this authority. Further, as determined by the circuit

court, Ark. Code Ann. § 28-65-301(b)(1) provides, in part, that the guardian of the estate has the duty to invest the assets of the ward. Accordingly, we hold that the circuit court did not err in its statutory interpretation of Ark. Code Ann. § 28-65-301(a)(3).

HVC's estate next argues that Betts, as guardian of HVC, entered into a binding arbitration agreement in violation of Ark. Code Ann. § 28-65-302(a)(1)(G), which provides:

> (a)(1) No guardian appointed prior to October 1, 2001, shall make any of the following decisions without filing a petition and receiving express court approval:
>
> (G) Consent to a settlement or compromise of any claim by or against the incapacitated person or his or her estate.

HVC's estate claims that Betts was required to obtain specific judicial approval prior to entering an agreement that contained an arbitration agreement because an agreement to arbitrate is the same as a consent to compromise or settle. In support of its argument, HVC's estate cites the following definition of "compromise" from *Black's Law Dictionary*:

> An agreement between two or more persons to settle matters in dispute between them; an agreement for the settlement of a real or supposed claim in which each party surrenders something in concession to the other.—Also termed *compromise and settlement*[.]

*Black's Law Dictionary* 305 (8th ed. 2004).

Raymond James contends that the clear import of § 28-65-302(a)(1)(G) is that claims by or against a guardian, once they arise, must be taken to the probate court for approval before being finally settled. By way of explanation, Raymond James states that, likewise, if the parties were to reach a settlement before the case was submitted for a final determination of the arbitrator, then that settlement would be submitted to the probate court for approval, but that is not the case here. Raymond James states that an agreement to arbitrate is an agreement to submit future, potential, but not yet real or realized, claims to a particular type of adjudicative forum. Further, Raymond James states that an agreement to arbitrate future claims is not an agreement to settle a matter already in dispute.

With respect to this argument, the circuit court made the following findings:

> Actions of a guardian of a person and estate requiring specific court approval are identified in Ark. Code Ann. § 28-65-302. Of concern to petitioners is Ark. Code Ann. § 28-65-302(a)(1)(G), which requires court approval for a guardian to obtain consent to a settlement or compromise of any claim by or against the incapacitated person or his or her estate. The opening of the investment accounts specifically authorized by the Probate Court and the signing of the contracts, which would include arbitration provisions, are not to be considered actions by the guardian that would be outside of the scope of the guardian's inherent authority. These acts are not tantamount to a settlement or compromise of a claim on behalf of a guardianship.

By signing the contracts, which included arbitration agreements, Betts, as guardian, did not consent to a settlement or compromise; therefore, Ark. Code Ann. § 28-65-302(a)(1)(G) is inapplicable in this case. The claims subject to the arbitration agreement have yet to be decided, and the parties will be free to make arguments regarding their claims before the arbitrator. At this point, no settlement or compromise exists; therefore, Betts, as guardian, could not have consented to such when she signed the contracts that included the arbitration agreements. We cannot say that the circuit court clearly erred in its interpretation of Ark. Code Ann. § 28-65-302(a)(1)(G).

Finally, HVC's estate argues that the contract agreeing to binding arbitration of an incapacitated person's claims without court approval violates Arkansas public policy. Again citing to Ark. Code Ann. §§ 28-65-301(a)(3) and 28-65-302(a)(1)(G), HVC contends that Betts, as guardian, "ignore[d] specific Arkansas statutory law that prevented her from agreeing to divest the court of jurisdiction or compromise the right to have the probate judge hear any matters regarding the estate." For the reasons already discussed, Ark. Code Ann. §§ 28-65-301(a)(3) and 28-65-302(a)(1)(G) did not prevent Betts from opening investment accounts specifically authorized by the probate court and signing contracts that included arbitration provisions.

We have noted that, as a matter of public policy, arbitration is strongly favored in Arkansas. *See, e.g., Ruth R. Remmell Revocable Trust, Inc. v. Regions Fin. Corp.*, 369 Ark. 392, 255 S.W.3d 453

(2007); *Pest Mgmt. v. Langer*, 369 Ark. 52, 250 S.W.3d 550 (2007); *Slusser v. Farm Serv., Inc.*, 359 Ark. 392, 198 S.W.3d 106 (2004). We have also recognized that arbitration is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion. *Hart v. McChristian*, 344 Ark. 656, 42 S.W.3d 552 (2001). We understand that our cases involving arbitration agreements have not dealt with issues concerning a guardian's right to enter an arbitration agreement on behalf of a ward.

As we have stated many times, it is for the General Assembly, not the courts, to establish public policy. *See, e.g., Brewer v. Poole*, 362 Ark. 1, 207 S.W.3d 458 (2005). Here, the legislature has spoken on the issue of what is required of a guardian of the estate. The legislature has made it clear, pursuant to its enactment of Ark. Code Ann. § 28-65-301(b)(1)(B) (Repl. 2004), that a guardian has a duty to invest the funds of the estate. The circuit court found, and we agree, that "by authorizing Betts to deposit and invest the funds and other assets of the guardianship estate, she would also have the authority to execute whatever account forms or client agreements would be necessary in order to accomplish the same," and that "[i]t is apparent that the completion of the new account forms and the execution of the client agreements with which arbitration disclosures were included, were done in the ordinary course of business for the purpose of establishing those accounts within which the assets were to be deposited as authorized by the Probate Court." By entering into agreements with financial institutions to invest on behalf of the estate of HVC, Betts acted as required by § 28-65-301(b). Furthermore, if the legislature had intended to prohibit a guardian, on behalf of the estate, from entering a contract containing an arbitration agreement, it could have expressly done so, but it did not. Accordingly, we cannot say that a contract agreeing to binding arbitration of an incapacitated person's claims without court approval violates Arkansas public policy.

Affirmed.