SLIP OPINION

Cite as 2016 Ark. 235

# SUPREME COURT OF ARKANSAS

No. CV–15–1053

| | |
|---|---|
| COURTYARD GARDENS HEALTH AND REHABILITATION, LLC, ET AL. <br><br> APPELLANTS <br><br> V. <br><br> PATRICIA ANN SHEFFIELD, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF MAYLISSIA HOLLIMAN, DECEASED <br> APPELLEE | Opinion Delivered June 2, 2016 <br><br> APPEAL FROM THE CLARK COUNTY CIRCUIT COURT [NO. CV-2014-82] <br><br> HONORABLE ROBERT MCCALLUM, JUDGE <br><br><br><br> AFFIRMED. |

**RHONDA K. WOOD, Associate Justice**

Appellants, Courtyard Gardens Health and Rehabilitation, LLC and others ("collectively Courtyard"), appeal from a circuit court order denying their motion to dismiss and compel arbitration of the claims brought against them by appellee, Patricia Ann Sheffield, as special administrator of the estate of Maylissia Holliman, deceased. For reversal, Courtyard contends first that the circuit court erroneously ruled that Johnathan Mitchell, Holliman's emergency custodian, did not have authority to bind her to the arbitration agreement, and second, that the arbitration agreement is unenforceable because of the unavailability of the National Arbitration Forum ("NAF"). We affirm the court's ruling that the custodian did not have authority to execute the arbitration agreement. Because the agreement is invalid, we do not need to reach the second point.

In May 2010, following a complaint filed with adult protective services (APS), Johnathan Mitchell, a consultant with APS, went to Holliman's home to check on her.

When he arrived, he found Holliman disoriented and unable to get out of bed. He also reported that Holliman was soaked in urine, that there was an inoperative gun in her bed, and that there was little food in the home. Because Mitchell thought that there was an imminent danger of serious bodily harm or death to Holliman if she remained at home alone, Mitchell sought emergency custody of Holliman.

The circuit court entered an ex parte order of emergency custody and set a probable cause hearing. The order authorized Arkansas Department of Human Services (DHS) to take Holliman into protective custody and to provide her "with physical, mental or emotional care as required in the opinion of a duly authorized or licensed physician, dentist, surgeon, or psychologist, whether or not such care is rendered on an emergency basis or on an inpatient or outpatient basis." In addition, the circuit court gave DHS access to Holliman's financial information "for the sole purpose of inspection of any financial information or assets."

Pursuant to the circuit court's order, Mitchell admitted Holliman to Courtyard. Mitchell, as Holliman's custodian, signed an admission agreement and an arbitration agreement on her behalf upon admission.

In August 2014, Sheffield, as special administrator of Holliman's estate, filed suit against Courtyard, alleging that Holliman had sustained injuries at Courtyard and that those injuries led to her death. Courtyard subsequently filed a joint motion to dismiss and compel arbitration. Following a hearing, the circuit court entered an order denying the motion. It concluded that Mitchell lacked authority under the ex parte order of emergency custody to bind Holliman to the arbitration agreement. It further found that the NAF Code of

Procedure, which was incorporated into the arbitration agreement, was an integral term of arbitration and that because NAF was unavailable, the arbitration was impossible to perform.

In reviewing an arbitration agreement, courts look to state contract law to determine whether the parties' agreement to arbitrate is valid. *GGNSC Holdings, LLC v. Lamb*, 2016 Ark. 101. The same rules of construction and interpretation apply to arbitration clauses as apply to agreements generally. *Id.* We are to determine the construction and legal effect of a written contract to arbitrate as a matter of law. *Id.* In light of the policy favoring arbitration, this court will not construe the agreement strictly but will read it to include subjects within the spirit of the parties' agreement. *Courtyard Health & Rehab., LLC v. Arnold*, 2016 Ark. 62.

Courts must address two threshold issues affirmatively when determining whether to grant a motion to compel arbitration: (1) is there a valid agreement to arbitrate between the parties, and (2) if such an agreement exists, does the dispute fall within its scope. *HPD, LLC v. TETRA Techs., Inc.*, 2012 Ark. 408, at 6, 424 S.W.3d 304, 308. In answering these questions, doubts regarding arbitrability must be resolved in favor of arbitration. *Id.* We review a circuit court's order denying a motion to compel arbitration de novo on the record. *Carmody v. Raymond James Fin. Servs., Inc.*, 373 Ark. 79, 281 S.W.3d 721 (2008).

Turning first to the threshold issue of validity, we must determine whether Mitchell had authority to bind Holliman to the arbitration agreement. The burden of proving an agency relationship lies with Courtyard as the party asserting its existence. *See Lamb*, 2016 Ark. 101, at 4.

SLIP OPINION

Courtyard argues that the circuit court erred in its determination that Mitchell lacked the authority to bind Holliman to the arbitration agreement. Specifically, they argue that the Adult Maltreatment Custody Act (AMCA), Arkansas Code Annotated sections 9-20-101 *et seq.* (Repl. 2015), gives APS the authority to enter into the arbitration agreement. They argue that the rationale this court applied in *Carmody,* 373 Ark. 79, 281 S.W.3d 721, and *GGNSC Holdings*, 2016 Ark. 101 compels this conclusion. We disagree.

A custodian under the AMCA is "the Department of Human Services while the department is exercising a seventy-two-hour hold on an endangered or impaired person or during the effective dates of an order granting custody to the department." Ark. Code Ann. § 9-20-103. Under the AMCA, the custodian has the following duties and responsibilities:

> (a)(1) If the probate division of circuit court appoints the Department of Human Services as the legal custodian of a maltreated adult, the department shall:
>> (A) Secure care and maintenance for the person;
>> (B) Honor any advance directives, such as living wills, if the legal documents were executed in conformity with applicable laws; and
>> (C) Find a person to be guardian of the estate of the adult if a guardian of the estate is needed.
> (2) If the court appoints the department as the legal custodian of a maltreated adult on an emergency, temporary, or long-term basis, the department may:
>> (A) Consent to medical care for the adult;
>> (B) Obtain physical or psychological evaluations;
>> (C) Obtain medical, financial, and other records of the adult; and
>> (D) Obtain or view financial information of the adult that is maintained by a bank or similar institution.

Ark. Code Ann. § 9-20-120.

A custodian designation is different from a guardianship of a person or of the estate. Notably, a guardian of the estate has the duty to exercise due care and to preserve, invest, apply, and account for the estate. Ark. Code Ann. § 28-65-301(b)(1) (Repl. 2012). The

AMCA limits the custodian to obtaining and viewing the ward's financial information. Ark. Code Ann. § 9-20-120(a)(2)(c)–(d). The AMCA contains no similar provision and limits the court to "appoint the department only as custodian of the adult and not as guardian of the person or of the estate of the adult . . ." Ark. Code Ann. § 9-20-119(c)(1). This implies that a custodian does not have the powers of a guardian of the estate. Therefore, statutorily the custodian performs a different role than that of guardian of the person or of the estate.

Courtyard relies on *Carmody* and *Lamb* to assert that Mitchell had the authority to bind Holliman to an optional arbitration agreement when he acted as her custodian. *See Carmody*, 373 Ark. 79, 281 S.W.3d 721; *Lamb*, 2016 Ark. 1. However, these cases are distinguishable from the present case because they both involved guardians of the person and the estate.

*Carmody* presented the issue of whether a guardian of the person and the estate of an incapacitated person could bind the incapacitated person or his estate to an arbitration provision. 373 Ark. 79, 281 S.W.3d 721. The estate argued that the guardian was required to obtain specific judicial approval prior to entering into an agreement that contained an arbitration provision because an agreement to arbitrate is the same as consent to compromise or settle, which the guardian statute prohibited. *Id*. This court disagreed and affirmed the validity of the arbitration agreement. *Id*. Similarly, in *Lamb*, we concluded that a guardian of the person and of the estate may enter into an arbitration agreement on the ward's behalf. *Id*.

Both *Carmody* and *Lamb* emphasize that if an agent is merely the guardian of the person, he has no authority to bind the ward's property. *Carmody*, 373 Ark. 79, 281 S.W.3d

721; *Lamb*, 2016 Ark. 1. In both cases, we enforced arbitration agreements only because the agents were guardians of both the person *and* the estate. Here, Mitchell was a custodian, not a guardian of the person or the estate. Because of this distinction, *Carmody* and *Lamb* are not instructive. Neither *Carmody* nor *Lamb* discussed the issue presented here, which is whether a custodian can bind the ward to an arbitration agreement.

We hold that a custodian of a ward under the AMCA does not have the authority to bind the ward to arbitration. The legislature intended for custodians to play a more limited role than guardians. The main purpose of a custodian is to ensure that the ward is safe and cared for appropriately and that the ward's assets are secure. If needed, the AMCA specifically permits the court to appoint a guardian of the estate if the ward requires additional assistance. Ark. Code Ann. § 9-20-119(c)(2). Because the circuit court appointed Mitchell as custodian of Holliman, he had no authority to make decisions concerning her estate, and he could not bind Holliman to arbitration. Therefore, the arbitration agreement is invalid.

Because we conclude that the arbitration agreement is invalid, there is no need to discuss whether the agreement, if valid, would be enforceable. We affirm the circuit court's denial of Courtyard's joint motion to dismiss and to compel arbitration.

DANIELSON, J., concurs.

*Kutak Rock, LLP*, by: *Mark W. Dossett*, *Jeff Fletcher*, and *Margaret Benson*, for appellant.

*Appellate Solutions, PLLC*, by: *Deborah Truby Riordan*; and *Wilkes & McHugh, P.A.*, by: *William P. Murray III*, for appellee.