

# ARKANSAS COURT OF APPEALS

DIVISIONS II & III
No. CV-15-743

|  |  |
|---|---|
| COURTYARD GARDENS HEALTH AND REHABILITATION, LLC, ET AL. | **Opinion Delivered:** December 14, 2016 |
|  | APPEAL FROM THE CLARK COUNTY CIRCUIT COURT |
| APPELLANTS | [NO. 10CV-13-78] |
| V. | HONORABLE ROBERT MCCALLUM, JUDGE |
| ANNETTE WILLIAMSON, PERSONAL REPRESENTATIVE OF THE ESTATE OF JERLINE KENNEL, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF JERLINE KENNEL |  |
| APPELLEE | AFFIRMED |

## RITA W. GRUBER, Judge

Courtyard Gardens Health & Rehabilitation, LLC, and related entities (collectively "Courtyard") appeal from an order denying their motion to compel arbitration.[1] We affirm.

### I. *Background*

Courtyard operates a nursing-home facility in Arkadelphia, Arkansas. Ms. Jerline Kennel, the mother of appellee Annette Williamson, became a resident of the facility in 2005, when it was owned by another company. When Courtyard assumed ownership in 2009, it presented the facility's residents with an admission agreement and an optional

---

[1] An order denying a motion to compel arbitration is an appealable order. Ark. R. App. P.−Civ. 2(a)(12) (2016).

arbitration agreement. The arbitration agreement provided, in essence, that any claims related to Courtyard's provision of services or health care would be resolved exclusively by binding arbitration. It also stated that arbitration would be conducted in accordance with the National Arbitration Forum ("NAF") Code of Procedure.

The admission agreement and arbitration agreement were signed by Ms. Kennel's son, L.E. Kennel, Jr., pursuant to a power of attorney she had given him in 2005. Thereafter, Ms. Kennel remained at the Courtyard facility until shortly before her death in September 2012.

In July 2013, appellee Annette Williamson, who had been appointed personal representative of Ms. Kennel's estate, sued Courtyard in Clark County Circuit Court. Williamson alleged that Courtyard had committed negligence, medical malpractice, conspiracy, and violations of the Arkansas Residents' Rights Act, Ark. Code Ann. §§ 20-10-1201 to -1209 (Repl. 2014), while caring for her mother. Courtyard moved to dismiss the complaint and to compel arbitration pursuant to the arbitration agreement signed by L.E. Kennel, Jr., in 2009. Williamson resisted arbitration on three grounds: 1) L.E. lacked the authority to agree to arbitration on his mother's behalf; 2) enforcement of the arbitration agreement was impossible because the NAF was no longer authorized to conduct arbitration proceedings; and 3) the arbitration agreement was unconscionable.

Following a hearing, the circuit court ruled that the arbitration agreement was not unconscionable, and that ruling is not at issue on appeal. The court also made the following rulings, from which this appeal is brought:

> 1. The Arbitration Agreement was not validly formed. The Arbitration Agreement was signed by L.E. Kennel on Ms. Jerline Kennel's behalf, pursuant to a 2005 Power

of Attorney granted to him. On its face and without considering any extrinsic evidence, the 2005 Power of Attorney did not encompass the signing of Arbitration Agreements, and thus Mr. Kennel did not have the authority to enter the Arbitration Agreement on Ms. Kennel's behalf. Accordingly, no valid arbitration agreement was formed, and the Court denies the Defendants' Motion to Compel Arbitration.

2. In the alternative, the Arbitration Agreement is unenforceable because it incorporates the National Arbitration Forum ("NAF") Code of Procedure. The selection of the NAF is an integral term of the Arbitration Agreement, and it is impossible to perform due to the unavailability of the NAF.

Courtyard argues that both of the above rulings were in error and that the court should have compelled arbitration of Williamson's claims. Our standard of review is de novo. *LegalZoom.com, Inc. v. McIllwain*, 2013 Ark. 370, 429 S.W.3d 261.

## II. *Validity of the Arbitration Agreement*

Before a court can compel arbitration, it must make a threshold determination that a valid arbitration agreement exists between the parties. *Courtyard Gardens Health & Rehab., LLC v. Sheffield*, 2016 Ark. 235, 495 S.W.3d 69; *Courtyard Gardens Health & Rehab., LLC v. Quarles*, 2013 Ark. 228, 428 S.W.3d 437. Arbitration is a matter of contract, and the elements of a contract, including mutual agreement, must be met. *GGNSC Holdings, LLC v. Lamb*, 2016 Ark. 101, 487 S.W.3d 348; *Quarles*, *supra*. When a third party signs an arbitration agreement on behalf of another, as was done in this case, the court must determine whether the third party was clothed with the authority to bind the other person to arbitration. *See Sheffield*, *supra*; *Lamb*, *supra*; *Quarles*, *supra*.

In the present case, the determination of whether L.E. Kennel, Jr., had the authority to agree to arbitration on his mother's behalf requires the interpretation of the power-of-attorney document through which he acted. The document is a pre-printed form that contains a list of fifteen distinct categories, designated (A) through (O), over which the

principal may grant authority to her agent. The categories include such matters as real estate, banking, insurance, medical procedures, and—in particular for our purposes—claims and litigation, which is designated category (H). The form states that the principal should select a category by placing her initials in a blank space that corresponds to the category. Specifically, the instructions provide:

> NOTICE: The Principal must write his or her initials in the corresponding blank space of a box below with respect to each of the subdivisions (A) through (O) below for which the Principal wants to give the agent authority. If the blank space within a box for any particular subdivision is NOT initialed, NO AUTHORITY WILL BE GRANTED for matters that are included in that subdivision. Cross out each power withheld.

Ms. Kennel filled out this power-of-attorney form in 2005 with the assistance of Registered Nurse Angela Marlar, who is now the Administrator of Courtyard. The form contains Ms. Kennel's initials along with those of Nurse Marlar beside the first four categories, (A) through (D), which generally deal with property, investment, and banking transactions. Thereafter, no initials appear next to any remaining categories. However, a wavy, vertical line runs next to categories (E) through (H), and apparently Ms. Kennel's full signature appears vertically alongside the final categories (I) through (O).

Courtyard argues that this document either unequivocally gave L.E. Kennel, Jr., the power to agree to arbitration on his mother's behalf or could be interpreted as doing so with the aid of extrinsic evidence. The circuit court ruled, however, without resort to extrinsic evidence, that the power-of-attorney document, on its face, did not encompass the signing of arbitration agreements. We agree with the circuit court's decision.

The nature and extent of the agent's authority must be ascertained from the power-of-attorney instrument itself. *See Vogelgesang v. U.S. Bank*, 92 Ark. App. 116, 211 S.W.3d

4

575 (2005). If the instrument is unambiguous, its construction is a matter of law for the court to determine. *Id.* A contract is unambiguous if its terms are not susceptible to more than one equally reasonable construction. *Id.* However, if the written terms are ambiguous, extrinsic evidence may be needed to establish the intent of the parties, and the meaning of the contract then becomes a question of fact. *See id.*

Courtyard argues that the power-of-attorney document in this case, which admittedly contains certain inconsistencies, should be viewed as a whole to determine the existence of an ambiguity. However, the document is drafted in a way that allows the principal to pick and choose from among several distinct powers to confer upon her agent. As such, we may narrow our focus to whether Ms. Kennel chose the particular category that would have allowed her son to agree on arbitration as the method for resolving her disputes with Courtyard.

As evidenced by the document itself, Ms. Kennel selected categories (A) through (D) using the prescribed manner of placing her initials adjacent thereto. However, there is no dispute that her initials do not appear beside category (H) Claims and Litigation, which alone among the listed categories encompasses the power to agree to arbitration.[2] Instead, the only mark that appears next to category (H) is the tail-end of a wavy line. Whatever meaning this line may have, it is not reasonably susceptible to being interpreted as a stand-in for the principal's initials.

---

[2] We note that our power-of-attorney statutes place arbitration or alternate dispute resolution within the category of claims and litigation. *See* Ark. Code Ann. § 28-68-212(5) (Repl. 2012) (currently in effect); Ark. Code Ann. § 28-68-412(5) (Repl. 2004) (in effect when Ms. Kennel's power of attorney was signed).

The instructions in the document are clear. The principal "must" write her initials in the corresponding blank space with respect to each of the subdivisions (A) through (O) for which she wants to give the agent authority; and if the blank space within a box for any particular subdivision "is NOT initialed, NO AUTHORITY WILL BE GRANTED for matters that are included in that subdivision." It is, therefore, the placement of the principal's initials next to a category that triggers the grant of authority with regard to that category. Regardless of what mark Ms. Kennel placed beside category (H), it is clear that she did not place her initials there. Consequently, Ms. Kennel did not confer on L.E. Kennel, Jr., the authority to agree to arbitration on her behalf. We therefore affirm the circuit court's refusal to compel arbitration.

### III. *Impossibility of Performance*

Because we have affirmed the circuit court's decision on the above ground, we need not reach Courtyard's argument that the court erred in ruling that the arbitration agreement was impossible to perform due to the unavailability of the NAF. However, we note that this issue is addressed in a separate case handed down today. *See Courtyard Gardens Health & Rehab., LLC v. Davis*, 2016 Ark. App. 608, ___ S.W.3d ___.

Affirmed.

GLOVER, WHITEAKER, VAUGHT, and HOOFMAN, JJ., agree.

HARRISON, J., dissenting in part; concurring in part.

**BRANDON J. HARRISON, dissenting in part and concurring in part.** The primary dispute in this case at this point is whether the power of attorney is reasonably open to two different readings. It is. Let's look at the document itself.

 

TO ALL PERSONS, be it known that I, _Jerline Kennel_
of _2701 Twin Rivers Dr., Arkansas, Arkadelphia 71923_
the undersigned Principal, do hereby make and grant a general power of attorney to _J. E. Kennel, Jr. My son,_
_of #2 Hartford Dr., Arkadelphia, Arkansas 71923_
and do thereupon constitute and appoint said Individual as my attorney-in-fact/agent.

If my Agent is unable to serve for any reason, I designate_____, as my successor Agent.
of_____

My attorney-in-fact/agent shall act in my name, place and stead in any way which I myself could do, if I were personally present, with respect to the following matters, to the extent that I am permitted by law to act through an agent:

(NOTICE: The Principal must write his or her initials in the corresponding blank space of a box below with respect to each of the subdivisions (A) through (O) below for which the Principal wants to give the agent authority. If the blank space within a box for any particular subdivision is NOT initialed, NO AUTHORITY WILL BE GRANTED for matters that are included in that subdivision. Cross out each power withheld.)

| | | |
|---|---|---|
| [ _JK on_ ] | (A) | Real estate transactions |
| [ _JK on_ ] | (B) | Tangible personal property transactions |
| [ _JK on_ ] | (C) | Bond, share and commodity transactions |
| [ _JK on_ ] | (D) | Banking transactions |
| [ ] | (E) | Business operating transactions |
| [ ] | (F) | Insurance transactions |
| [ ] | (G) | Gifts to charities and individuals other than Attorney-in-fact/Agent (If trust distributions are involved or tax consequences are anticipated, consult an attorney.) |
| [ ] | (H) | Claims and litigation |
| [ ] | (I) | Personal relationships and affairs |
| [ ] | (J) | Benefits from military service |
| [ ] | (K) | Records, reports and statements |
| [ ] | (L) | Full and unqualified authority to my attorney-in-fact/agent to delegate any or all of the foregoing powers to any person or persons whom my attorney-in-fact/agent shall select |
| [ ] | (M) | Access to safe deposit box(es) |
| [ ] | (N) | To authorize medical and surgical procedures |
| [ ] | (O) | All other matters |

Durable Provision: [ _JK on_ ] (P) If the blank space in the block to the left is initialed by the Principal, this power of attorney shall not be affected by the subsequent disability or incompetence of the Grantor.

Other Terms: _Jerline Kennel_ _Kennel_
_____
_____

No one disputes that the parties failed to complete the power-of-attorney form as directed. The majority acknowledges "inconsistencies" and still concludes that the document is unambiguous where section (H) is concerned. I can't determine, based on this document alone, what the parties intended to communicate on a crucial legal matter more than 10 years ago. Because it is unclear which powers Ms. Kennel intended to grant based on the four corners of the document, I would direct the circuit court to receive evidence

on what the parties themselves understood that they were doing when the paper was filled out in 2005. In fact, Courtyard presented evidence on point through the affidavit of an employee who allegedly helped Ms. Kennel complete the document; but the circuit court did not consider it. On remand, the record should be reopened so both sides could fully present to the circuit court whatever evidence might available so that it could then decide whether a triable issue exists on what powers principal Ms. Kennel placed with her son, the purported agent. Unfortunately, there will be no remand, and here's why that is a mistake.

One of the document's possible meanings is the majority's position: Ms. Kennel did not place her initials "JK" next to line (H), and the form required initials, so no power to arbitrate was given. This is a reasonable position. But another reasonable view is that Ms. Kennel wanted to empower her agent to handle litigation matters. Two questions anchor my point. Why is there something rather than nothing in the ___ (H) space? And given that there is something rather than nothing there, what does the mark mean?

The "something" is a squiggly line. It appears next to categories (E) through (H) and emanates from the initials above it. Let's not get too attached to the mark that is there. The most important points are the majority's approach and the document's instructions. For example, what if a • or a √ an "X" or a "YES" had been placed beside category (H)? These marks might have indicated Ms. Kennel's intent to grant an agent certain authority to varying degrees, but they would not have satisfied the document's specific instructions.

But we have a squiggly line, and I don't know with sufficient certainty what it means. Perhaps the scrivener (who was not Ms. Kennel) intended it as a shorthand for continuing the initials "JK" to additional categories. Or not. Here it's important to also point out that

the instructions directed Ms. Kennel to "Cross out each power withheld." What does "cross out" mean? Is the squiggly line a crossing out of the categories where we find it, meaning the mark was used to withhold those powers? Maybe. Maybe not. If only initialing a category will confer the related power, then why is there a need to cross out a category to withhold a power? And why would Ms. Kennel have presumably given so many sweeping powers to an agent throughout the document but withhold it from the categories where we find the confusing mark? There is no obvious difference in degrees of importance between the categories where the squiggly line does and doesn't appear.

Moving down the document, we encounter a third distinct mark, presumably Ms. Kennel's signature, and it spans the final seven categories. The written instructions required that she initial the corresponding blank spaces, yet Ms. Kennel's signature appears vertically across a number of them and again at the bottom of the paper. What if the issue was whether the signature reliably communicated Ms. Kennel's desire to confer the powers touched by her signature? Signatures aren't initials, though I grant that would be an easier call than interpreting a mark like the squiggly line.

The bottom line is that the majority's decision prevents a preprinted power-of-attorney form that was not completed according to its own instructions from being explained by those who actually put pen to the important legal paper. Because I can join neither the approach nor the result reached under Part II of the opinion, I respectfully dissent.

I do, however, join Part III of the opinion.

*Kutak Rock LLP*, by: *Mark W. Dossett*, *Samantha B. Leflar*, and *Luke Burton*, for appellants.

*Appellate Solutions, PLLC*, by: *Deborah Truby Riordan*; *The Edwards Firm, P.L.L.C.*, by: *Robert H. Edwards*; and *Wilkes & McHugh, P.A.*, by: *William P. Murray III*, for appellee.

SLIP OPINION