Othal Warren GRIFFIN et ux *v.* Carl W
FLEMISTER et ux

5-5930                                   481 S.W. 2d 718

Opinion delivered June 26, 1972

*Edgar R. Thompson,* for appellant

*Spitzberg, Mitchell & Hays,* for appellee.

CARLETON HARRIS, Chief Justice. This is a suit for specific performance. Carl W. Flemister and Jeanette Flemister, his wife, appellees herein, are owners of a lot and house in Little Rock which, according to the contention of appellees, appellants Othal Warren Griffin and Jamie Ellen, his wife, agreed to purchase for the sum of $80,000, $30,020 to be paid to them in cash, and the balance to be paid by assuming an obligation to the Pulaski Federal Savings & Loan Association. The events leading up to this litigation are as follows:

According to Margaret Weatherford, a salesman with National Realty Company of Little Rock, Mrs. Griffin

contacted her and requested that she be shown the Flemister property. Later in the afternoon, Mr. and Mrs. Griffin were shown the house by Mrs. Weatherford who told them that the price was $85,000. Mrs. Weatherford stated that appellants asked if a $72,000 offer would be considered, and a written offer for that sum was executed by Mrs. Griffin, who had received her husband's approval to make the offer for the two of them. Thereafter, Mrs. Weatherford had no contact with Mr. Griffin, but Mrs. Griffin called and said that they (the Griffins) might be able to pay as much as $80,000 and the real estate agent was requested to contact Mr. Flemister and inquire whether he would take that amount. Flemister stated that he would consider $80,000 but would have to have $2,500 earnest money. When this message was conveyed to Mrs. Griffin, she executed a check for the $2,500, executed the offer to purchase on behalf of her husband, and stated that her husband had authorized her to make the $80,000 offer. This offer was accepted, but Mrs. Griffin said that her husband was out of town and she would have him "out there Saturday". The abstract was brought up to date, and Mrs. Weatherford stated that she waited for instructions as to where, or to whom, the abstract was to be delivered. About three weeks later, Mr. Griffin called Mrs. Weatherford and told her that he had no money with which to "close out". She also talked to Griffin's brother who told her that "they had the money to close out, that they had just decided they didn't want to buy the house".[1] Thereafter, the Flemisters instituted suit in the Pulaski Chancery Court seeking specific performance from the Griffins. It was asserted that appellants had been notified by Mrs. Weatherford that the offer had been accepted, and that she had requested instructions with respect to whom the abstract of title should be delivered for examination; that appellees had been willing at all times since March 30, 1971,[2] to convey the property but appellants had failed and refused to comply with their contract. Appellants answered and admitted the making of the offer but denied that the offer had been accepted by appellees or that appellees had offered or tendered to appellants a

---

[1]Mr. Griffin was associated with his brother in the insurance business.

[2]The offer of $80,000 was executed by Mrs. Griffin on March 29.

certificate of title insurance or an abstract of title as alleged in the complaint. A third party complaint was filed against Mrs. Weatherford asserting that the latter had enticed Mrs. Griffin "by undue influence to execute an offer on the property contrary to the instructions of the defendant, Othal Warren Griffin". The return of the $2,500 was sought, and $25,000 punitive damages were prayed for based on the alleged misconduct of Mrs. Weatherford in stating that she had offered an abstract of title, such assertion being untrue, and further, in enticing Mrs. Griffin to execute the offer. After the filing of an answer by Mrs. Weatherford denying the allegations, the case proceeded to trial, the evidence being presented through depositions. The court held that the parties had entered into the contract, finding specifically that Mr. Griffin had authorized his wife to execute the offer on his behalf. It was further found that the Flemisters were ready, willing, and capable of complying with the contract and that Griffin, without just cause, had refused to perform his obligations. Griffin was ordered to specifically perform the contract by paying into the registry of the court, within twenty days, the sum of $28,-087.82, and the clerk of the court was directed to deliver, upon payment of this sum, a warranty deed to appellants, "subject to recorded restrictions and easements, if any, which said deed shall provide that the grantee therein named shall assume and agree to pay the balance due and outstanding upon the aforesaid secured note held by Pulaski Federal Savings & Loan Association". From the decree, appellants bring this appeal. For reversal, it is first asserted that Mrs. Griffin did not have the authority to make the offer in behalf of her husband, and the court erred in so holding, and it is then contended that Griffin does not have the ability to perform the contract.

There is no dispute about certain facts. Admittedly, Mr. Griffin never personally made any offer to anyone wherein he agreed to pay $80,000 for the property. Likewise, admittedly, Mrs. Griffin did have full authority to make the offer of $72,000 on behalf of her husband, Mr. Griffin himself so testifying. Accordingly, the sole question is whether Mrs. Griffin was authorized by her husband to make the $80,000 offer.

Mr. Griffin testified (by deposition) that he could have arranged to acquire the $72,000 from the bank at Cabot, but he did not arrange for such a loan because he was told the $72,000 offer would not be accepted. He said that he learned about the offer executed by his wife four or five days after it had been made, and he testified he told Mrs. Weatherford that he would not pay $80,000 or any amount over the $72,000 figure, though he could not remember the date on which Mrs. Weatherford was so informed. Griffin said that he had no knowledge as to whether his wife had been coerced or unduly influenced; that his wife was a woman of good judgment.

What is the law with reference to the authority of a spouse to bind the other spouse in contractual matters? In *Cooper* v. *Cooper,* 225 Ark. 626, 284 S.W. 2d 617, this court said:

> "The husband is not an agent for the wife solely by reason of the marital relationship. 'But slight evidence of actual authority is sufficient proof of the agency of the husband for the wife in matters of domestic nature.' 41 C.J.S. 549. Agency may be established by circumstantial evidence. *Williams* v. *O'Dwyer & Ahern Company,* 127 Ark. 530, 192 S.W. 899; *Sidle* v. *Kaufman,* 345 Pa. 549, 29 A. 2d 77. In the *Sidle* case, the court said: 'The relationship of agency cannot be inferred from mere relationship or family ties unattended by conditions, acts, or conduct clearly implying an agency'. . .; but such relation is competent evidence when considered with other circumstances as tending to establish the facts of agency and where there has been other competent evidence tending to the same end.' And, it is said in Restatement of Agency, § 22: 'Neither husband nor wife by virtue of the relationship has power to act as agent for the other. The relationship is of such a nature, however, that circumstances which in the case of strangers would not indicate the creation of authority or apparent authority may indicate it in the case of husband and wife.' "

With further regard to agency, in the early case of *Johnson* v. *Arkansas Foundry Co.,* 292 S.W. 373 (omitted

from Arkansas Reports because "of no value as a precedent"), this court stated:

> "As we have said, the only question in the case is a question of agency, a question of fact, and Ruby Johnson testifies that she was the agent; and this court has said:
>
> 'The existence of an agency cannot be shown by proving the acts and declarations of the agent, but the agent may himself testify in regard to his agency and the extent of his authority.' *De Camp* v. *Graupner,* 157 Ark. 578, 249 S.W. 6.
>
> This court has held many times that, while you cannot prove agency or the extent of an agent's authority by the declarations or the acts of an agent, you can prove agency by the agent himself."

Applying these precedents to the case at bar, what are the facts? In the first place, Mrs. Griffin testified that the $72,000 offer which she signed on March 19, 1971, was executed on behalf of her husband (and this is agreed to by the husband). She testified that after this offer had been rejected, the matter was discussed between the two of them, and Mr. Griffin agreed to the $80,000 offer, which she thereafter made. Mrs. Griffin said that her husband decided that he did not want the house and he so advised Mrs. Weatherford. According to the witness, she was not overreached or unduly influenced, and she further testified that there had been no serious trouble or disagreements with her husband because of the making of the offer.

Let us remember that this is not a case wherein the husband and wife were separated—or having domestic difficulties. There is nothing in the record to indicate animosity or any trouble between them whatsoever before the offer was made, and only minor irritations after the making of the offer. It is most unusual, of course, for a wife, who is living amicably with her husband, to deliberately testify to facts contrary to the testimony of her husband, and this fact itself adds considerable weight to her testimony. In fact, such testimony goes beyond what

might be termed "slight" evidence. Unquestionably, the fact that she admittedly had the authority to execute the $72,000 offer, adds credence to the evidence given by the witness that she was authorized to make the $80,000 offer.

It is also noticeable that the answer filed on behalf of appellants admits that an offer was made but asserts that appellees did not accept the offer. The answer then sets out that appellants were not tendered a certificate of title insurance, or an abstract of title, and accordingly, the appellees had violated the contract. It is not until the third party complaint against Mrs. Weatherford is reached that appellants make any assertion that Mrs. Griffin did not have the authority to execute the instrument in behalf of her husband. It is asserted that undue influence was exercised on Mrs. Griffin to execute the offer on the property "contrary to the instructions of the defendant, Othal Warren Griffin. That she at the time knew that his permission to execute this said agreement had been denied ***". At any rate, we certainly cannot say that the chancellor's findings were against the preponderance of the evidence.

It is next asserted that Mr. Griffin does not have the ability to perform the contract. This allegation was not pleaded nor was any testimony offered in support of this defense. The court found that Mr. Griffin was capable of performing the contract, and there is no evidence that would establish a contrary finding. Of course, if one could finance a $72,000 transaction, it might be considered a circumstance to indicate that he could finance one only $8,000 more. Be that as it may, we cannot say that the chancellor's finding on this point was against the preponderance of the evidence.

Affirmed.

JONES, J., dissents.