2013 Ark. 228

COURTYARD GARDENS HEALTH AND REHABILITATION, LLC; Arkadelphia Holdings, LLC; SLC Operations Master Tenant, LLC; SLC Operations, LLC; SLC Professionals Ofarkansas, LLC; SLC Administrative Services of Arkansas, LLC; Capital SeniorCare Ventures, LLC; SLC Properties, LLC; 2701 Twin Rivers Drive, LLC; Angela Marlar, in her capacity as Administrator/Executive Director of Golden Living Center–Arkadelphia, n/k/a Courtyard Gardens

Health and Rehabilitation, LLC; and Deborah Thornton, in her capacity as Administrator of Courtyard Gardenshealth and Rehabilitation, LLC, f/k/a Golden Living Center–Arkadelphia, Appellants/Cross–Appellees

v.

Kenny QUARLES, as Special Administrator of the Estate of Bennie Jean Quarles, Deceased, and on behalf of the Wrongfuldeath Beneficiaries of Bennie Jean Quarles, Deceased, Appellee/Cross–Appellant.

No. CV–12–873.

Supreme Court of Arkansas.

May 30, 2013.

Kutak Rock LLP, Fayetteville, by: Mark W. Dossett and Samantha B. Leflar, for appellants.

Wilkes & McHugh, P.A., Little Rock, by: Melody H. Piazza and Deborah Truby Riordan, for appellees.

JIM HANNAH, Chief Justice.

Appellants/Cross–Appellees Courtyard Gardens Health and Rehabilitation, LLC; Arkadelphia Holdings, LLC; SLC Operations Master Tenant, LLC; SLC Operations, LLC; SLC Professionals of Arkansas, LLC; SLC Administrative Services of Arkansas, LLC; Capital SeniorCare Ventures, LLC; SLC Properties, LLC; 2701 Twin Rivers Drive, LLC; Angela Marlar, in her capacity as Administrator/Executive Director of Golden Living Center—Arkadelphia, n/k/a Courtyard Gardens Health and Rehabilitation, LLC; and Deborah Thornton, in her capacity as Administrator of Courtyard Gardens Health and Rehabilitation, LLC, f/k/a Golden Living Center—Arkadelphia (collectively, "Courtyard Gardens") appeal from an order entered by the Clark County Circuit Court denying their motion to dismiss and to compel arbitration. Appellee/Cross–Appellant Kenny Quarles, as Special Administrator of the Estate of Bennie Jean Quarles, deceased, and on behalf of the wrongful-death beneficiaries of Bennie Jean Quarles, deceased ("the Estate"), cross-appeals from the same order. We hold that there was no valid arbitration agreement as a matter of law; accordingly, we affirm the denial of the motion to compel arbitration. This disposition renders all other issues, including the cross-appeal, moot.

The facts are these. On February 2, 2009, Bennie Jean Quarles, the decedent, became a resident of Golden Living Center, a nursing home in Arkadelphia. At that time, her son, Ronald Quarles, signed admission documents on her behalf. Those documents included an arbitration agreement; however, that arbitration agreement is not the one at issue in this case. On July 1, 2009, Courtyard Gardens took over ownership and operation of the facility (and changed its name). Sometime shortly thereafter, Ronald Quarles signed a new admission agreement and a new optional arbitration agreement in his capacity as "responsible party" on behalf of his mother. The arbitration agreement stated in pertinent part as follows:

It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Fo-

rum Code of Procedure, ("NAF"') which is hereby incorporated into this Agreement, and not by a lawsuit or resort to court process.

(Footnote omitted.) The decedent was a resident of the facility until March 16, 2010.

On May 3, 2011, Kenny Quarles, another of the decedent's sons, filed in the circuit court an amended complaint against Courtyard Gardens and various other entities associated with it and with Golden Living Center.[1] Kenny Quarles filed the amended complaint as power of attorney for his mother, who was incapacitated at that time; after her death on May 17, 2011, he was substituted as party plaintiff in his role as special administrator of her estate. The amended complaint sought damages for negligence, medical malpractice, and violations of the Arkansas Long–Term Care Residents' Rights Act, Arkansas Code Annotated sections 20–10–1201 to –1209 (Repl.2005).

Courtyard Gardens answered and then filed its motion to dismiss the complaint and compel arbitration, arguing that the arbitration agreement was valid and enforceable and that the claims raised in the amended complaint fell within its scope. In response, Kenny Quarles (who was still acting as power of attorney at that time) contended that the arbitration agreement was invalid for two reasons: (1) there was no evidence that Courtyard Gardens assented to the agreement, as it was not signed by a corporate representative; and (2) there was no evidence that the decedent assented to the agreement, as Ronald Quarles did not have authority to bind her

by signing as her "responsible party." Kenny Quarles further asserted that Courtyard Gardens had waived its right to demand arbitration by failing to timely assert it; that the arbitration agreement was unconscionable; and that enforcement of the arbitration agreement was impossible because it contained an integral term designating an arbitrator, the National Arbitration Forum, which had since become unavailable.[2]

After a hearing, the circuit court entered an order denying Courtyard Gardens's motion to compel arbitration. The order included three findings: (1) Courtyard Gardens assented to the arbitration agreement; (2) questions of fact remained regarding Ronald Quarles's authority to bind the decedent to the arbitration agreement, leaving the issue of authority as a question for the jury; and (3) enforcement of the arbitration agreement according to its terms was rendered impossible due to the unavailability of the National Arbitration Forum, the designation of which was an integral term of the agreement. Courtyard Gardens filed a timely notice of appeal, and the Estate filed a timely notice of cross-appeal.

On appeal, Courtyard Gardens argues that there was a valid arbitration agreement between the parties as a matter of law. It advances three alternative theories in support of this argument: that Ronald Quarles had actual authority to sign the arbitration agreement on the decedent's behalf, that he had statutory authority to sign the arbitration agreement on the decedent's behalf, and that the decedent was bound as a third-party beneficiary to the arbitration agreement. In

---

1. The Golden Living Center defendants ultimately settled and were dismissed from the case.

2. Following charges of anti-consumer bias, the National Arbitration Forum entered into a consent judgment with the State of Minnesota, the purpose of which was "to require the complete divestiture by the NAF Entities of any business related to the arbitration of consumer disputes."

addition, Courtyard Gardens maintains that the arbitration agreement was enforceable, as it did not expressly select the National Arbitration Forum as arbitrator and, even if it had, both the Federal Arbitration Act and the agreement itself provide for substitution in case of unavailability. The Estate responds that the evidence is in dispute regarding Ronald Quarles's actual authority and that neither statutory authority nor the third-party-beneficiary doctrine applies. On the second point, the Estate contends that the arbitration agreement's provision referring to the National Arbitration Forum's Code of Procedure, and the incorporation of those procedures into the agreement, amounted to a designation in an integral term and that the substitution provisions are therefore inapplicable. Alternatively, the Estate argues that Courtyard Gardens waived its right to arbitrate by failing to timely assert it. On cross-appeal, the Estate asserts that the arbitration agreement was invalid because Courtyard Gardens did not assent to it. Courtyard Gardens responds that its actions indicated its assent.

■ Our jurisdiction is in accordance with Arkansas Rule of Appellate Procedure—Civil 2(a)(12) (2012) and Arkansas Code Annotated section 16–108–228(a)(1) (Supp.2011), which permit interlocutory appeals from orders denying motions to compel arbitration. We granted the Estate's motion to reassign this case to this court on the basis that it presents a first-impression issue of statutory interpretation, pursuant to Arkansas Supreme Court Rule 1–2(b)(1) and (6) (2012). We review a circuit court's order denying a motion to compel arbitration de novo on the record. *S. Pioneer Life Ins. Co. v. Thomas*, 2011 Ark. 490, 385 |₆S.W.3d 770.

■ As we have noted, the parties raise several issues in support of their positions. However, the threshold issue—and the one that is dispositive in this case—is whether there was a valid arbitration agreement. *See Gruma Corp. v. Morrison*, 2010 Ark. 151, 362 S.W.3d 898. This court has held that arbitration is simply a matter of contract between parties. *S. Pioneer Life Ins. Co., supra.* The question of whether a dispute should be submitted to arbitration is a matter of contract construction, and we look to the language of the contract that contains the agreement to arbitrate and apply state-law principles. *Id.* We have further held that the same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally; thus, we will seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself. *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 147 S.W.3d 681 (2004) (quoting *E–Z Cash Advance, Inc. v. Harris*, 347 Ark. 132, 60 S.W.3d 436 (2001)). Finally, the construction and legal effect of an agreement to arbitrate are to be determined by this court as a matter of law. *Id.*

■ We must first determine whether Ronald Quarles had actual authority to bind the decedent to the arbitration agreement. Courtyard Gardens posits that Ronald Quarles signed the arbitration agreement in his capacity as the decedent's agent. Our law on agency is well settled:

We have adopted the definition of agency contained in the Second Restatement of the Law of Agency, § 1, comment a, which provides that the relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act. The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on the principal's behalf

and subject to his control. *Crouch v. Twin City Transit*, 245 Ark. 778, 434 S.W.2d 816 (1968). The two essential elements of the definition are authorization and right to control. *Evans v. White*, 284 Ark. 376, 378, 682 S.W.2d 733, 734 (1985). The burden of proving an agency relationship lies with the party asserting its existence. *Pledger v. Troll Book Clubs, Inc.*, 316 Ark. 195, 871 S.W.2d 389 (1994).

In support of its contention that Ronald Quarles was acting as the decedent's agent at the relevant time, Courtyard Gardens points to his deposition testimony, wherein he stated that he understood that he was signing the arbitration agreement on his mother's behalf; that, while his mother was not present in the room when he signed it, he had discussed with her that he was going to sign the documents "to admit her into the nursing home"; and that he "think[s]" that he showed the arbitration agreement to his mother and discussed with her whether or not she wanted him to sign it. However, this testimony clearly related to the February 2009 documents signed upon the decedent's admission to Golden Living Center. The undated arbitration agreement at issue here was signed sometime after July 1, 2009, when Courtyard Gardens took over ownership and operation of the facility. There was no testimony that Ronald Quarles showed this arbitration agreement to his mother or discussed with her whether or not she wanted him to sign it. In fact, Ronald Quarles testified that he did not remember signing new documents as a result of the change in ownership. He did state that he understood that he was signing both the second admission agreement and the second arbitration agreement on his mother's behalf. Nonetheless, we have held that, while the statements and actions of an alleged agent may be admissible to corroborate other evidence tending to establish agency, neither agency nor the scope of agency can be established by declarations or actions of the purported agent. *B.J. McAdams, Inc. v. Best Refrigerated Exp., Inc.*, 265 Ark. 519, 579 S.W.2d 608 (1979).

Acknowledging that the decedent had been diagnosed with moderate to severe dementia around the time of her admission to the facility, Courtyard Gardens contends that the evidence showed that her dementia was intermittent. It also avers that she was presumed to have the capacity to act as a principal and to grant her son authority to act as her agent. We need not determine these issues because, mental capacity aside, the evidence is still insufficient. While Ronald Quarles purported to act on the decedent's behalf and subject to her control, there is no evidence at all to support the contention that the decedent had authorized him to do so, even assuming that she had the capacity to provide authorization. Stated differently, one of the two essential elements of an agency relationship—authorization—has not been established. The only evidence introduced by Courtyard Gardens was Ronald Quarles's deposition testimony, and, as we have stated, his statements are insufficient to establish agency. *Id.* Furthermore, even his deposition testimony failed to include an assertion that his mother indicated a desire for him to act on her behalf. On the record before us, we hold that the evidence fails to demonstrate, as a matter of law, that Ronald Quarles had actual authority to bind the decedent to the arbitration agreement.

This does not yet end our analysis because Courtyard Gardens makes two alternative arguments in support of its position that the parties entered into a valid arbitration agreement. First, it contends that Ronald Quarles had statutory authority to sign the arbitration agreement on the

decedent's behalf. Specifically, Courtyard Gardens relies on Arkansas Code Annotated section 20–9–602(11) (Supp.2011), which provides that an adult child of a parent who is of unsound mind "may consent, either orally or otherwise, to any surgical or medical treatment or procedure not prohibited by law that is suggested, recommended, prescribed, or directed by a licensed physician[.]" Courtyard Gardens suggests that Ronald Quarles, as the decedent's adult child, had authority under this statute to not only consent to her medical treatment but to also consent to related contracts, including the arbitration agreement. We reject this interpretation on the basis that it conflicts with the plain language of section 20–9–602(11).

■ The basic rule of statutory interpretation is to give effect to the intent of the General Assembly. *Carmody v. Raymond James Fin. Servs., Inc.*, 373 Ark. 79, 281 S.W.3d 721 (2008). The first rule in determining the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* This court will construe a statute so that no word is left void, superfluous, or insignificant, with meaning and effect given to every word in the statute if possible. *Id.* When the language of a statute is plain and unambiguous, conveying a clear and definite meaning, we need not resort to the rules of statutory construction. *Id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.* Giving the words of section 20–9–602(11) their ordinary and usually accepted meaning, it simply cannot be said that the statute contemplates the signing of an arbitration agreement by an adult child on behalf of a parent of unsound mind. The statute un-ambiguously refers only to "any surgical or medical treatment or procedure" as actions to which an adult child may consent. Consequently, we conclude that Ronald Quarles did not have authority to bind the decedent to the arbitration agreement by virtue of section 20–9–602(11).

■ For its second alternative argument, Courtyard Gardens contends that the third-party-beneficiary doctrine applies to bind the decedent to the arbitration agreement as a matter of law. More specifically, Courtyard Gardens maintains that it and Ronald Quarles entered into the arbitration agreement with the intent to benefit the decedent, a third party. The circuit court did not rule on this argument, and it is therefore not preserved for our review. *See Lucas v. Jones*, 2012 Ark. 365, 423 S.W.3d 580 (stating that, where an appellant fails to obtain a specific ruling below, we do not consider that point on appeal). In its order addressing whether the parties had entered into a valid arbitration agreement, the circuit court limited its finding to issues of authority (in addition to the issue of Courtyard Gardens's assent). Even assuming that this finding dealt with both actual authority and statutory authority, we cannot say that it also encompassed Courtyard Gardens's argument on the unrelated issue of the third-party-beneficiary doctrine.

■ Because we determine that Ronald Quarles had neither actual authority nor statutory authority to enter into the arbitration agreement on the decedent's behalf, we hold that there was no valid arbitration agreement as a matter of law. We note that the circuit court's order framed the issue as one of fact, finding that questions of fact remained for the jury on the issue of authority. Nonetheless, we can affirm because the circuit court reached the right result, albeit for the wrong reason. *See, e.g., Sluder v.*

*Steak & Ale of Little Rock, Inc.*, 368 Ark. 293, 245 S.W.3d 115 (2006).

Our holding that the parties did not have a valid contract to arbitrate is dispositive; therefore, we need not consider whether the arbitration agreement was enforceable, whether Courtyard Gardens waived its right to arbitrate, or whether the arbitration agreement was invalid on the basis of Courtyard Gardens's failure to assent to it.

Affirmed on direct appeal; cross-appeal moot.

GOODSON, J., dissents.

COURTNEY HUDSON GOODSON, Justice, dissenting.

The majority affirms the circuit court's denial of the motion to compel arbitration because, in its estimation, Courtyard Gardens failed to produce conclusive evidence that Ronald Quarles had the actual authority to bind the decedent to the agreement. I dissent because the majority has misallocated the burden of proof and decides the issue as one of law when questions of fact remain as to Ronald Quarles's actual or apparent authority to enter into the arbitration agreement.

Both Courtyard Gardens and the Estate agree that the provisions of the Federal Arbitration Act (FAA) govern this case. While the substantive issues are determined by the FAA, the procedural issues are determined by Arkansas law. *England v. Dean Witter Reynolds, Inc.*, 306 Ark. 225, 811 S.W.2d 313 (1991). When there is no Arkansas law on the subject, we look to the decisional law of other jurisdictions for guidance. *See Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 27 S.W.3d 361 (2000). In the context of motions to compel arbitration, courts apply a standard similar to that applicable to a motion for summary judgment. *SmartText Corp. v. Interland, Inc.*, 296 F.Supp.2d 1257 (D.Kan.2003) (collecting cases). Initially, the party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction involving interstate commerce. *Custom Performance, Inc. v. Dawson*, 57 So.3d 90 (Ala.2010). Once the moving party has properly supported his or her motion to compel arbitration, the burden then shifts to the nonmovant to present evidence tending to show that the arbitration agreement is invalid or inapplicable to the case. *Id.* If the party opposing arbitration presents sufficient evidence to create a fact issue as to the existence of a valid arbitration agreement, then the issue must be resolved by the trial court or by a jury, if one is requested. *SSC Selma Operating Co., LLC v. Gordon*, 56 So.3d 598 (Ala.2010). *Accord England, supra.*

Here, Courtyard Gardens met its only burden of showing the existence of an arbitration agreement, as the arbitration agreement itself constitutes sufficient evidence that a contract calling for arbitration exists. *See Gordon, supra.* It was then the Estate's burden to demonstrate that the agreement was invalid. The Estate countered by questioning Ronald Quarles's authority to enter into the agreement. Properly applying the principles set forth above, the circuit court found that, based on the record developed thus far, a question of fact remained for resolution by a trier of fact. In light of the aforementioned authorities, I would uphold the circuit court's ruling. In my view, the majority wrongly places the burden of proof at this stage of the proceeding on Courtyard Gardens and apparently expects it to have conclusively resolved the agency issue at this juncture. Not only is it wrong to place the initial onus on Courtyard Gar-

dens, but it also strikes me as being fundamentally unfair to penalize Courtyard Gardens for not marshalling its evidence at this preliminary stage. In this instance, the circuit court's dispositive ruling was that the arbitration agreement failed due to the unavailability of the NAF to conduct the arbitration. With that finding, it became completely unnecessary for the parties to try the agency issue to a conclusion. Yet, the majority now holds that Courtyard Gardens is to be deprived of the opportunity to litigate this issue because it failed to prove that Ronald Quarles had the authority to enter into the agreement, a burden that it did not have at that point in the proceedings. I simply cannot agree to affirm on this basis.

Ordinarily, agency is a question of fact to be determined by a jury. *Evans v. White*, 284 Ark. 376, 682 S.W.2d 733 (1985). The question of agency becomes one of law only where the facts are undisputed and where only one inference can be reasonably drawn from them. *Id.* The existence of an agency cannot be shown by proving the acts and declarations of the agent, but the agent himself may testify in regard to his agency and the extent of his authority. *Pakay v. Davis*, 367 Ark. 421, 241 S.W.3d 257 (2006). This court has held many times that, while one cannot prove agency or the extent of an agent's authority by the declarations or the acts of an agent, a party can prove agency by the agent himself. *Griffin v. Flemister*, 252 Ark. 907, 481 S.W.2d 718 (1972). Circumstantial evidence may be sufficient to establish agency, and the declarations of the purported agent may be used to corroborate other evidence of agency. *Hawthorne v. Davis*, 268 Ark. 131, 594 S.W.2d 844 (1980). The relationship of agency cannot be inferred from mere relationship or family ties unattended by conditions, acts, or conduct clearly implying an agency, but such relation is competent evidence when considered with other circumstances as tending to establish the facts of agency. *Griffin, supra.*

While I agree with the majority that the acts and declarations of Ronald Quarles do not establish an agency relationship as a matter of law, that is not to say that Courtyard Gardens could not have proven that he had actual or apparent authority to enter into the arbitration agreement. That remained to be seen, and the issue would have been resolved had the circuit court not invalidated the arbitration agreement on purely legal grounds. As it stands, Courtyard Gardens met its initial burden of establishing the existence of the agreement. At that juncture, nothing more was required of it. Therefore, I cannot in good conscience uphold the denial of the motion to compel arbitration for the reasons stated by the majority. On this issue, the circuit court's reasoning and analysis were correct. The result reached by the majority falls short of being right.