KENNETH S. HIXSON, Judge, dissenting. I agree with the majority that the issue of contributory negligence was not properly argued below and was not preserved for appeal. However, I dissent from the majority’s decision to uphold the judgment based on McGraw’s promissory-estoppel claim. I am guided primarily by our supreme court’s recent holding in Courtyard Gardens Health & Rehabilitation, LLC v. Quarles, 2013 Ark. 228, 428 S.W.3d 437, that while the statements of an alleged agent may be admissible to corroborate other evidence tending to establish agency, neither agency nor the scope of agency can be established by declarations or actions of the purported agent. I would reverse the judgment because there was a lack of evidence that Mercy owed a duty to Dr. McGraw or that Mercy authorized the Pea Ridge satellite office manager to “take care of the lawsuit” or act as its agent in that respect. The issue of duty is always one for the trial court and not the jury, and if a court finds that no duty of care is owed, a claim of negligence fails as a matter of law and a directed |lsverdict is appropriate. D.B. Griffin Warehouse, Inc. v. Sanders, 336 Ark. 456, 986 S.W.2d 836 (1999). Likewise, the existence of a fiduciary duty and what duty is owed, if any, is always a question of law. Key v. Coryell, 86 Ark.App. 334, 185 S.W.3d 98 (2004). Nothing in the law creates a duty for an employer to manage litigation filed solely against its employees, nor does the existence of an employer/employee relationship create a fiduciary duty to defend such claims. Therefore, the trial court should have directed verdicts in favor of Mercy as to Dr. McGraw’s claims for negligence and breach of a fiduciary duty. That brings us to the issue of whether this case can be affirmed on the theory of promissory estoppel, as held by the majority. To prove promissory estoppel, a plaintiff must show that the defendant made a promise, that the defendant should have reasonably expected the plaintiff to act or refrain from acting in reliance on the promise, that the plaintiff acted or refrained from acting in reasonable reliance on the promise to her detriment, and that injustice can be avoided only by enforcement of the promise. Fairpark, LLC v. Healthcare Essentials, 2011 Ark. App. 146, 381 S.W.3d 852. In this case because the defendant is a corporation, the question is whether the person who made the promise had the authority to make the promise and bind the company. The promise, even if it can be accurately called that, was made by the Pea Ridge satellite office manager or her assistant. As an initial matter, the promise to “take care of’ the complaint was vague and could have meant a lot of things, including that the complaint would be transmitted to Mercy’s in-house counsel. The majority places significant importance on the fact that it was the office policy of Mercy that when a Mercy physician is sued for medical malpractice, the physician 114is required to inform the hospital president or his assigns of the impending litigation. Specifically, a provision in an agreement between the hospital and the physician provided in pertinent part that the physician agreed to “inform the hospital, through the President or his/her desig-nee of ... the filing of a lawsuit against me.” Mercy, or any other hospital or medical provider, certainly has a legitimate business interest in being informed if one of its physicians is being sued for medical malpractice. However, I cannot find any reason to extrapolate such an inherent business interest into a legal duty or promise to “take care of’ and assume the physician’s defense of a medical-malpractice lawsuit. Moreover, in this case there was a lack of evidence that Ms. Bosley, the satellite office manager, or Ms. Spencer, the satellite office coordinator, had actual authority to act on behalf of Mercy in undertaking to handle a medical-malpractice claim against one of Mercy’s physicians. Because these employees lacked actual authority, the issue then becomes whether they had apparent authority, and there was no substantial evidence to support such a conclusion. Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which it holds the agent out as possessing; such authority as she appears to have by reason of the actual authority she has or such authority as a reasonably prudent person, using diligence and discretion, in view of the 'principal’s conduct, would naturally suppose the agent to possess. Sterne, Agee & Leach, Inc. v. Way, 101 Ark.App. 23, 270 S.W.3d 369 (2007) (emphasis added). Whether an agent is acting within her apparent authority is a question of fact for the jury, Walker v. Stephens, 3 Ark.App. 205, 626 S.W.2d 200 (1981), and [1sin determining the sufficiency of the evidence we draw every reasonable inference in the light most favorable to the appellee and affirm if there is any substantial evidence to support the verdict. Ark. La. Gas Co. v. Cates, 10 Ark.App. 426, 664 S.W.2d 897 (1984). Even viewing the evidence in the light most favorable to Dr. McGraw, I cannot agree that there was substantial evidence to support the jury’s finding that Mercy held Ms. Bosley out as having authority to bind it to an oral promise to “take care of’ the medical-malpractice lawsuit. It is undisputed that both Ms. Bosley and Ms. Spencer undertook to send copies of the complaint to Mercy’s in-house counsel and that Ms. Bosley advised Dr. McGraw that they “would take care of it.” But this conduct and these representations were by the alleged agents, which is insufficient to establish either the agency or its scope. See Quarles, supra. Focusing on the conduct of Mercy, as we are mandated to do by Quarles, Mercy did nothing to hold Ms. Bosley out as having any authority to handle the malpractice suit other than the fact that it made Ms. Bosley the satellite office manager. I submit that the mere fact of Ms. Bosley’s being the satellite office manager would not lead one of Mercy’s doctors to reasonably conclude or naturally suppose that Ms. Bosley possessed the authority, acting on behalf of Mercy, to promise to handle a medical-malpractice suit filed against that doctor. Even assuming arguendo that the satellite office manager had the apparent authority to make the statement, still, the “promise” must not be vague or uncertain. A “party asserting estoppel must prove it strictly, there must be certainty to every intent, the facts constituting it must not be taken by argument or inference, and nothing can be supplied by intendment.” Rigsby v. Rigsby, 356 Ark. 311, 316, 149 S.W.3d 318, 322 (2004). Even a cursory analysis of the alleged promise, “we will take care of it,” shows the inherent uncertainty. Does “take care of it” mean that Mercy will retain a defense attorney at its expense to represent Dr. McGraw? Does it mean that Mercy will forward the lawsuit to Dr. McGraw’s insurance carrier? If it really means “take care of it,” would that not mean that Mercy will “take care” of the judgment including any excess personal judgment? In my view, these uncertainties leave this lawsuit outside the requirements for promissory estoppel. Because there was no substantial evidence of any authority, actual or apparent, to bind Mercy to the alleged promise, and because the alleged promise was uncertain and vague, I would reverse the judgment against Mercy. Furthermore, I would be remiss if I neglected to point out what I perceive as an apparent, unintended consequence of the majority’s opinion. By affirming this case on the basis of promissory estoppel, the majority has affirmed a money judgment apportioned on a 70%-30% negligence verdict. Promissory estoppel sounds in contract, and I can find no basis in contract law for apportioning fault in this manner. For these reasons, I respectfully dissent.