KENNETH S. HIXSON, Judge
Appellant AT & T Corporation (AT & T) appeals from the trial court's order denying AT & T's motion to compel arbitration of a class-action complaint brought by appellee Clark County, individually and on behalf of similarly situated parties. On appeal, AT & T argues that the trial court's finding that a contract to arbitrate was never formed contravenes the Federal Arbitration Act and Arkansas law. AT & T also argues that the trial court erred in invalidating the arbitration provision on the ground that it deprived Clark County of a right under state law to sue in court or pursue state statutory remedies. We affirm.
Clark County received telephone service from AT & T dating back to at least 2009. On March 17, 2017, Clark County filed a complaint against AT & T on behalf of Clark County and all similarly situated counties in Arkansas that received AT & T telephone service. In the complaint, Clark County alleged that AT & T had collected improper and unlawful fees from Clark County and the putative class members. These allegedly improper fees included 911 fees, "Arkansas Universal Service charges," and "Special municipal charges." According to the complaint, over the course of the past six years Clark County had asked AT & T to provide authority for its imposition of these fees, but AT & T never provided any satisfactory explanation for the fees. Clark County sought a declaratory judgment that Clark County and the putative class members were not subject to imposition of the fees described in the complaint, and requested an injunction to enjoin AT & T from continuing to collect these fees. Clark County also asked for a judgment for all improper fees that AT & T had collected.
AT & T filed a motion to stay the proceedings and compel arbitration. In its motion, AT & T relied on two documents. The first document is labeled "AT & T ILEC Plexar ('Service')," hereinafter referred to as the "Service Agreement." The second document is labeled "AT & T ILEC Business Term and Volume Discount Plan ('Plan')," hereinafter referred to as the "Volume Plan." The top of the Service Agreement and the Volume Plan each contain the following verbiage:
? Pricing schedule to AT & T Agreement Reference No. ___
? Confirmation of Service OrderIf neither box above is checked then this document is a standalone confirmation of service order.
Neither of the above boxes were checked on either document. The Service Agreement and the Volume Plan each contain, inter alia , the following verbiage:
If this document serves as a confirmation of service order (as indicated above), the confirmation of service order is subject to: (a) the terms of the applicable Tariff, if the service is offered *700 pursuant to Tariff; or (b) the AT & T Business Service Agreement (BSA), if the Service is not offered pursuant to Tariff. Tariffs, Guidebooks, and the BSA can be found at www.att.com/servicepublications.
The Service Agreement was for a term of 60 months, and the Volume Plan was for a term of 48 months. However, each document provides:
At the end of the Term, the Service will automatically be provided to Customer under the terms and conditions of the applicable Tariff or Guidebook on a month-to-month basis at the then-current month-to-month Tariff or Guidebook rates unless and until execution of a then available term plan for the Service or until AT & T or Customer cancels the Service on 30-day prior written notice.
In its motion, AT & T asserted that when Clark County signed up for service, the services were provided subject to publicly filed tariffs. However, those services were de-tariffed on October 1, 2013, after which AT & T claimed that the services became subject to the AT & T Business Service Agreement (BSA) pursuant to the terms of the Service Agreement and the Volume Plan. Although AT & T updates the terms of the BSA from time to time, all versions of the BSA contained arbitration clauses. The BSA in effect when the services were de-tariffed provided:
AT & T and You ("We") agree to resolve all disputes between us through binding arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules, as modified by this provision.This agreement to arbitrate is broad, and includes disputes of any type between AT & T (including its subsidiaries, affiliates, agents, predecessors, successors, and assigns) and You (including authorized or unauthorized users/beneficiaries of services or devices) under this or prior agreements. WE AGREE THAT WE ARE WAIVING THE RIGHT TO A TRIAL BY JURY, TO PARTICIPATE IN A CLASS ACTION, OR TO SEEK REMEDIES BEYOND THE EXTENT NECESSARY TO PROVIDE INDIVIDUALIZED RELIEF TO, AND AFFECTING ONLY, AT & T OR YOU ALONE. WE AGREE NOT TO ACT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED OR DE FACTO CLASS OR REPRESENTATIVE PROCEEDING, OR AS A PRIVATE ATTORNEY GENERAL OR ON BEHALF OF THE GENERAL PUBLIC.
AT & T alleged that it notified Clark County that its services were no longer subject to the tariff. AT & T asserted that after Clark County was notified that its service was being de-tariffed effective October 1, 2013, continued use of AT & T services constituted acceptance of the BSA. Because Clark County chose to continue to receive AT & T services, AT & T thus maintained that, pursuant to the terms of the BSA (as allegedly incorporated into the parties' agreements), Clark County was required to resolve its claims against AT & T in binding arbitration.[1]
AT & T attached affidavits of employees in support of its motion to compel arbitration. Cleveland Beverage stated in his affidavit that when the customer is provided with one or more Service Agreements and Volume Plans to sign, the AT & T sales representative will provide copies of the tariffs or BSA to the customer on request. He also stated that those documents are available on AT & T's website. Michele Ruetty stated in her affidavit that the services *701 provided to Clark County became de-tariffed on October 1, 2013, at which point the services became subject to the BSA in effect at the time. She also stated that customers were notified in writing of the de-tariffing and application of the BSA. A copy of this notice was attached to her affidavit, and it states in pertinent part:
Dear Valued AT & T Business Customer:
As a result of recent changes in Arkansas law governing telecommunications services, Intrastate telecommunications services offered by AT & T Arkansas and all of your long distance services offered by AT & T Long Distance (collectively referred to herein as "business telecommunications services") will no longer be provided pursuant to tariffs filed with the Arkansas Public Service Commission.
Instead, effective October 1, 2013, if you are a retail customer, AT & T business telecommunications services to which you subscribe (unless you have an applicable written agreement) will be offered under the terms and conditions of the enclosed Business Services Agreement ("BSA"). Interstate services are not affected.
You will note that the detailed descriptions of most AT & T Arkansas and AT & T Long Distance services under that Agreement are provided as www.att.com/servicepublications, by selecting Arkansas and selecting the Business Publications link. The AT & T Arkansas and AT & T Long Distance links to State Guidebooks/Service Guides can be found under the Guidebooks/Service Guides column and the most current BSA can be found under the Service Agreement column. Guidebooks are documents that contain the description, price, and other terms (Terms of Service) and conditions of services.
If you agree with the terms and conditions of the enclosed BSA with respect to your currently installed AT & T Arkansas and AT & T Long Distance business telecommunications services, no action is required.
If you do not agree to all the terms and conditions of the enclosed BSA, you must contact us no later than October 1, 2013, to disconnect your service(s). You can contact us by calling your AT & T Sales Representative or calling the AT & T Customer Care Center at the toll-free billing inquiries number shown on your bill. Continued use of your AT & T business telecommunications service(s) after October 2, 2013, will constitute your acceptance of all the terms and conditions of the BSA.
Clark County filed a response to AT & T's motion to compel arbitration, asking that the motion be denied. Clark County contended that AT & T failed to produce any contract between the parties containing an arbitration agreement and that Clark County never agreed to arbitrate any claims with AT & T. Clark County asserted that, when it filed its complaint, AT & T was providing services to Clark County pursuant to a verbal contract. As evidence of a verbal contract, Clark County attached a March 2, 2017 email exchange between Clark County's counsel and Matthew Williams, an AT & T client solutions executive. After Clark County's counsel had sent Mr. Williams an email asking for an explanation as to why Clark County had been assessed a termination fee for canceling fax lines, Mr. Williams responded:
The contract or agreement was a verbal one. Because the County had less than 20 lines with ATT we don't have paper contracts. When we split the old account up I worked with Sandra to determine where lines needed to be located and we *702 canceled the lines that we weren't sure were needed any more.
When the lines were moved off of the old account we only had two plan options. One would have been to move the lines with no agreement and they would have been $120.00 per month. Or we placed them on a Business Local calling plan which requires a 12 month verbal commitment for $55 dollars per month per line. The verbal agreement was the best way to go because these were lines we were keeping going forward.
Clark County argued further that, even if there was a written contract in effect between the parties that contained an agreement to arbitrate, AT & T's motion to compel should be denied because it would violate the Tenth Amendment, it would eliminate the county's ability to seek declaratory relief, and it would violate Arkansas law.
A hearing was held on the motion to compel arbitration. No testimony was presented, and counsel for the parties argued their respective positions.
On July 11, 2017, the trial court entered an order denying AT & T's motion to compel arbitration. In its order, the trial court made these pertinent exhaustive findings and conclusions:
The only written contracts in the record are the two 2010 documents labeled "Pricing Schedule/Confirmation of Service Order." These documents do not mention arbitration. The documents contemplate three different options. If one box is checked, the document incorporates a pricing schedule. If another box is checked, the document is a Confirmation of Service Order. And, as was the case here, if neither box is checked, the document is a "standalone Confirmation of Service Order." As standalone Confirmation of Service Orders, the documents do not incorporate or refer to any other document. Therefore, the Court finds that there was no agreement to arbitrate.
According to the terms of the documents, if the box for the Confirmation of Service Order had been checked (which it was not), then the document would have been subject to either "(a) the terms of the applicable Tariff; or (b) an AT & T Business Service Agreement (BSA)." Since neither box was checked on either document, the Court finds that this language would not be applicable. However, even if the documents were construed as Confirmation of Service Orders (instead of standalone Confirmation of Service Orders), there is no dispute that the services in 2010 were being provided according to a tariff. Therefore, the BSA would not have been applicable.
AT & T concedes that the applicable tariff did not contain any arbitration provision. However, AT & T argues that when the services were de-tariffed in 2013, some version of the BSA became applicable. However, the standalone Confirmation of Service Orders do not state that they would incorporate some new contract obligation in the future. Instead, they say that services will either be offered pursuant to tariff or pursuant to a BSA. If parties intend to incorporate a separate document into a contract, the document to be incorporated must be described in such terms that its identity may be ascertained beyond reasonable doubt. It must be clear that the parties had knowledge of and consented to the incorporated terms. The BSAs produced by AT & T contain exculpatory contract provisions which are not favored by the law. As with other contract provisions, if these types of contract terms are contained on a separate document, they will not be incorporated *703 into the parties' contract unless the reference is clear and unequivocal and the terms of the incorporated document were known or easily available to the contracting parties.The Court finds that AT & T has failed to present evidence that either standalone Confirmation of Service Order incorporated any then-existing or subsequent BSA or that the County ever consented to any such incorporation. Therefore, the Court finds that the standalone Confirmation of Service Orders reflected the parties' agreement in 2010 and those documents did not require arbitration. Even if either document could be construed as a Confirmation of Service Order, they would not have incorporated a BSA. AT & T provided an affidavit from Matthew Williams in support of its Motion to Compel Arbitration. The County's Response provided a 2017 email from Mr. Williams that claimed that the County was receiving services pursuant to a "verbal" agreement and that AT & T did not have "paper contracts." AT & T now claims that Mr. Williams "was simply mistaken." Regardless of whether or not Williams was mistaken, the Court finds that AT & T has failed to meet its burden of demonstrating the existence of a contract containing a written provision for arbitration.
Since the Court concludes that the original agreement did not contain any agreement to arbitrate, the Court will now consider whether some version of the BSA became the contract between the parties at some later date. AT & T was providing service to the County in 2010 pursuant to a tariff. It claims that when its services were de-tariffed in 2013, the County then became subject to a BSA. The County argues that the BSA could not be construed as a contract.
[C]ontract formation includes, inter alia , competent parties, mutual agreement, and mutual obligation. Only the County Judge could have agreed to a contract on behalf of the County or to modify the terms of an existing County contract. Arkansas law also limits county contracts to seven-year terms. Each of the 2010 standalone Confirmation of Service Orders are the only documents in the record which were signed by the County Judge. AT & T provides no evidence to demonstrate any subsequent modification of those documents.
AT & T argues that "[c]ustomers were informed of the de-tariffing and application of the BSA." It claims that a notice about this change was sent to customers. However, AT & T provides no evidence that this notice was ever sent to or received by the County. A party cannot be bound by a contractual provision of which it is unaware.
The notice itself says that changes will occur "unless you have an applicable written agreement." If Clark County had received this notice, the County had a standalone agreement in effect in 2013 and would not have been on notice that AT & T was attempting to change the contract or add new terms to that agreement. [T]he FAA does not require parties to arbitrate when they have not agreed to do so.Even if there was evidence in the record that AT & T had notified the County of potential changes to either of the 2010 agreements, there is no evidence that the County ever consented to any such changes. It is well settled that in order to make a contract there must be a meeting of the minds as to all terms. There must be an objective manifestation of mutual assent for the formation of a contract. Only the County Judge would have had authority to bind the County to any contract, including a *704 written agreement to arbitrate. AT & T has failed to produce a written document, signed by the County Judge, which contains any terms other than those present in the 2010 standalone Confirmation of Service Orders. Based on the evidence, the Court finds that the BSA did not become a contract between the parties in 2013.
AT & T also argues that some version of the BSA which was never signed by the County Judge should be considered as the current contractual agreement between the parties. However, in addition to lack of notice and lack of consent by the County, the Court also finds that the BSA lacks mutual obligations and does not reflect a meeting of the minds as to all terms.
The County contends that the BSA does not impose any obligations on AT & T. At the hearing, AT & T argued that the BSA required AT & T to provide phone service. However, the BSA merely states that it "applies to the AT & T services to which you subscribe, except for service provided under (a) a Tariff; or (b) another agreement between you and AT & T." In 2010, AT & T provided phone services to the County pursuant to a Tariff. The parties also had "another agreement," namely the standalone Confirmation of Services Orders.
Without the standalone Confirmation of Service Agreements which include descriptions and prices for services or the applicable Tariff which contained prices, there would be no way to determine what services were covered by a BSA. The BSA itself contains no explanation of what services are being provided or the prices for those services. Among other things, the BSA allows AT & T to "change the price for a service" and to "change the terms and conditions of this Agreement." It also allows AT & T to "withdraw a Service upon reasonable notice" and it disclaims warranties and limits AT & T's liability. The Court finds that these provisions are not mutual and do not create a contract between the parties.
The BSA also contains an arbitration provision. Arbitration may not be enforced when it eliminates a party's right to pursue statutory remedies. An exception applies when arbitration forbid[s] the assertion of certain statutory rights. The County argues that the BSA's arbitration provision is defective in several respects.First of all, the County points out that Arkansas law allows counties to pursue legal and equitable remedies in order to enforce contract claims. AT & T counters that its arbitration provision would allow the County to pursue an action in small claims court. The BSA states that "[a]s the exclusive alternative to arbitration, AT & T or You may commence an individual action in Small Claims Court." The Arkansas Supreme Court has established the jurisdiction of Arkansas' inferior courts in Administrative Order No. 18. Small claims court is expressly limited to individuals or Arkansas corporations which have three or less shareholders and precludes the involvement of attorneys. Therefore, neither the County nor AT & T could be parties to a small claims action in Arkansas. The County also points out that it has a claim for declaratory relief. Courts of record have jurisdiction over declaratory judgment actions and the Arkansas Declaratory Judgments Act allows for a jury trial to determine fact questions. If the arbitration provision in the BSA was applied to the dispute in this case, the County would be unable to prosecute its claim in "small claims *705 court" and would have no ability to obtain declaratory relief.
The arbitration provision in the BSA also prohibits any "representative proceeding." Arkansas law provides that the county judge will represent a county in a legal action. Even if the BSA could be construed as a binding contract between the parties, the prohibition of any representative action could prevent the County from obtaining any relief. Therefore, even if some version of the BSA was incorporated into the original agreements between the parties or could be construed as a valid contract between the parties, the arbitration provision would not be enforceable against the County.
For these reasons, the Court hereby denies AT & T's Motion to Compel Arbitration and AT & T's Motion for Stay is hereby denied as moot. [citations omitted].
This appeal followed.
An order denying a motion to compel arbitration is an immediately appealable order. Ark. R. App. P.-Civ. 2(a)(12). This court reviews an order denying arbitration de novo on the record. Alltel v. Rosenow , 2014 Ark. 375, 2014 WL 4656609.
The Federal Arbitration Act (FAA) provides that "[a] written provision in any ... contract evidencing a transaction involving commerce to settle a controversy ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of a contract." 9 U.S.C. § 2. In reviewing an arbitration agreement, despite the provision being subject to the FAA, courts look to state contract law to determine whether the parties' agreement to arbitrate is valid. GGNSC Holdings, LLC v. Lamb , 2016 Ark. 101, 487 S.W.3d 348. Arbitration agreements are simply a matter of contract between the parties, and any dispute is a matter of contract construction. Courtyard Gardens Health & Rehab., LLC v. Quarles , 2013 Ark. 228, 428 S.W.3d 437. The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally; thus, this court will seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself. Id. The construction and legal effect of a written contract to arbitrate are to be determined by this court as a matter of law. Id. Although we are not bound by the trial court's decision, in the absence of showing that the trial court erred in its interpretation of the law, the trial court's decision will be accepted as correct on appeal. Diamante v. Dye , 2013 Ark. App. 630, 430 S.W.3d 196. The essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. GGNSC Holdings, supra.
Our supreme court has repeatedly stated that the threshold inquiry is whether an agreement to arbitrate exists; that is, whether there has been mutual agreement with notice as to the terms and subsequent assent. Alltel Corp. v. Sumner , 360 Ark. 573, 203 S.W.3d 77 (2005). In deciding whether a valid contract was entered into, this court keeps in mind the following two legal principles: (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators. Id. Both parties must manifest assent to the particular terms of the contract. Id.
If the trial court finds that a valid agreement to arbitrate exists, then *706 the trial court must determine whether the dispute falls within the scope of the arbitration agreement. Bank of the Ozarks, Inc. v. Walker , 2014 Ark. 223, 434 S.W.3d 357. Even if a court finds that an arbitration agreement exists and that the dispute falls within the scope of the arbitration agreement, the court may still declare an arbitration agreement unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." Id. (quoting Federal Arbitration Act, 9 U.S.C. § 2 ).
In this appeal, AT & T raises two arguments challenging the trial court's order denying arbitration. First, it contends that the trial court erred in concluding that a contract to arbitrate was never formed by AT & T and Clark County. Next, it argues that the trial court erred in invalidating the arbitration provision on the ground that it deprived Clark County of its right to pursue state statutory remedies.
In support of its first argument, AT & T cites Hart v. McChristian , 344 Ark. 656, 42 S.W.3d 552 (2001), where our supreme court stated that, as a matter of public policy, arbitration is strongly favored and that arbitration is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation. AT & T argues that the parties in this case agreed to binding arbitration because the 2010 documents signed by the Clark County judge incorporated by reference the BSA, which contains the arbitration agreement. AT & T submits that, per the terms of the Service Agreement and the Volume Plan, the agreements became subject to the BSA in 2013 after the services became de-tariffed.
AT & T further submits that, when it notified Clark County of the de-tariffing and applicability of the BSA in 2013, AT & T was not unilaterally modifying the contract. AT & T asserts that this notice merely informed Clark County of what the parties had already agreed to, i.e., if no tariff applied to the services, then the previously dormant BSA would govern. AT & T additionally argues that, even if its 2013 notice could be deemed a modification of the agreement, it was nonetheless valid because the notice communicated to Clark County that if no action was taken Clark County would be subject to the BSA. AT & T asserts that a manifestation of assent may be made wholly by conduct, and that Clark County's conduct of accepting the offer and continuing to receive services manifested its assent to the terms of the BSA.
AT & T's remaining argument is that the trial court erred in finding that the arbitration provision was unenforceable because it eliminated Clark County's right to pursue statutory remedies under Arkansas law. AT & T cites AT & T Mobility, LLC v. Concepcion , 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011), where the United States Supreme Court held that when state law prohibits outright the arbitration of a particular type of claim, the conflicting rule is displaced by the FAA. AT & T asserts that although the FAA does not preempt federal statutory rights, this rule does not apply to state statutory rights. See Coneff v. AT & T Corp. , 673 F.3d 1155 (9th Cir. 2012). Therefore, AT & T concludes, any principle of Arkansas law exempting Clark County's claims from arbitration would be preempted by federal law.
Our discussion will be limited to point one. For a party to assent to a contract, the terms of the contract, including an arbitration agreement, must be effectively communicated. Asset Acceptance, LLC v. Newby , 2014 Ark. 280, 437 S.W.3d 119. Therefore, appellant was required to produce specific evidence that appellee was subject to the contract and demonstrate *707 that the arbitration clause was communicated to appellee and that it assented to that clause. See id. We hold that AT & T failed in its burden to show that the arbitration clause was communicated to Clark County or that Clark County assented to it.
When a contract refers to another writing and makes the terms of that writing a part of the contract, the two documents become a single agreement between the parties and must be construed together. Ingersoll-Rand Co. v. El Dorado Chem. Co. , 373 Ark. 226, 283 S.W.3d 191 (2008). AT & T argues that the 2010 documents signed by the Clark County judge incorporated the terms of the BSA, effectively making the two documents a single agreement. However, in order to incorporate a separate document by reference into a contract, the reference must be clear and unequivocal , and the terms of the incorporated document must be known or easily available to the contracting parties. Ingersoll-Rand, supra. Furthermore, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms. Id.
The two documents at issue herein clearly state at the top of each document:
? Pricing Schedule to AT & T Agreement Reference No. ___
? Confirmation of Service Order
If neither box above is checked then this document is a standalone confirmation of service order.
(Emphasis added.) Neither of the above boxes was checked by AT & T on either document. Therefore, by the explicit terms of the agreements, these agreements were not "Pricing Schedules to AT & T Agreement Reference No. ___" nor were these agreements "Confirmation of Service Orders." The explicit terms of each agreement make these documents "standalone Confirmation of Service Orders." Each AT & T document provides further:
If this document serves as a confirmation of service order (as indicated above) , the confirmation of service order is subject to: (a) the terms of the applicable Tariff, if the service is offered pursuant to Tariff; or (b) the AT & T Business Service Agreement (BSA), if the service is not offered pursuant to Tariff.
(Emphasis added.)
As stated previously, it was AT & T's burden to demonstrate that Clark County was subject to and assented to the terms of the BSA containing the arbitration clause AT & T sought to enforce. The documents, which AT & T drafted, clearly provide boxes to be checked if the order is to be deemed a "Confirmation of Service Order," and these boxes could have been, but were not, checked. The documents were signed by AT & T on behalf of a contract specialist, who declined to check any boxes. Had the "Confirmation of Service Order" box been checked, then by the terms of the contract, the parties may have been subject to the applicable tariff or BSA (if service was not offered pursuant to a tariff).[2] However, this box was not checked on either document, making these documents by their own terms "standalone Confirmation of Service Orders." The phrase "standalone Confirmation of Service Order" is not defined in the documents. The term "standalone" implies that the parties need not look to some other document to determine if there are other applicable terms. AT & T contends that there is no difference between a "Confirmation of Service Order" and a "standalone *708 Confirmation of Service Order," and that to construe these orders to be not subject to the BSA would produce an absurd result. However, our inquiry is whether the documents clearly and unequivocally incorporate by reference the BSA, and whether it was clear that Clark County assented to the terms of this allegedly incorporated document. At the very least, the AT & T documents are ambiguous in this respect, and our supreme court has held that ambiguities in a contract are construed strictly against the drafter. See Sturgis v. Skokos , 335 Ark. 41, 977 S.W.2d 217 (1998). Because the BSA is implicated only if the 2010 documents constitute "Conformation of Service Orders," and they are instead "standalone Confirmation of Service Orders," we hold that AT & T failed to show that there was a meeting of the minds and that Clark County had assented to the BSA.
AT & T, however, also argues that, even if the 2010 documents did not incorporate the BSA as part of the contract when it was executed, the terms were modified to include the BSA by the conduct of the parties in 2013 when the services were de-tariffed. AT & T does agree that a provision requiring arbitration is a material term to an agreement. AT & T relies on the notice it allegedly sent to Clark County regarding the application of the BSA and Clark County's alleged acquiescence to this modification.
Fundamental principles of contract law require that both parties to a contract agree to any modification of the contract. Van Camp v. Van Camp , 333 Ark. 320, 969 S.W.2d 184 (1998). Unless otherwise provided by statute, it is not essential that the mutual assent of the parties to modify the contract be express, and it may be implied from acts and circumstances. 17A C.J.S. Contracts § 561 (2018). The manifestation of assent may be made wholly or partly by acts or by failure to act. Id.
We conclude, for several reasons, that AT & T failed to produce sufficient evidence that the parties agreed to modify their contract to include the terms of the BSA. First, AT & T did not offer proof that it mailed any notification of the proposed modification to Clark County. Instead, AT & T only submitted an affidavit of an employee stating that "customers" were informed of the de-tariffing and application of the BSA, with an attached copy of a form letter addressed to "Valued AT & T Business Customer." However, this was insufficient to demonstrate that a copy of this letter was actually mailed to Clark County or that the appropriate official received it. Moreover, the form letter provided that if the customer did not agree to the terms of the BSA, it must contact AT & T no later than October 1, 2013. Because AT & T did not show that the letter was sent to Clark County at all, it certainly failed to demonstrate that Clark County received it in time to contemplate the alleged modification and opt out. Finally, even had there been proof that AT & T timely sent this notice to Clark County, the letter provided, "[E]ffective October 1, 2013, if you are a retail customer, AT & T business telecommunications services to which you subscribe (unless you have an applicable written agreement ) will be offered under the terms and conditions of the enclosed Business Services Agreement (BSA)." (Emphasis added.) Again, an AT & T document contains an ambiguous phrase, "applicable written agreement." AT & T contends that Clark County did not have an applicable written agreement as intended by the notice. However, Clark County contended that it did have applicable written agreements with AT & T in the form of the Service Agreement and the Volume Plan, neither of which clearly manifested *709 its assent to the BSA. Clark County, therefore, concludes that the above provision would not have put Clark County on notice that its agreement was being modified to include the BSA. We agree with Clark County that, based on the terms of the AT & T notice, Clark County did not agree to a modification of its agreements with AT & T.
Because AT & T failed to demonstrate it communicated the arbitration clause to Clark County or that Clark County assented to it, we affirm the trial court's order denying AT & T's motion to compel arbitration. Because we affirm on this basis, we need not address the trial court's alternate finding that the arbitration clause infringed on Clark County's state statutory remedies.
Affirmed.
Gruber, C.J., and Whiteaker, J., agree.

It is undisputed that the tariff did not contain an arbitration clause.

We do not express any opinion on whether the provision would be enforceable if the applicable box had been checked, as that issue is not within the scope of our decision.